DORA A. CURTIS, by Her Next Friend, Appellee, v. SIOUX CITY & HIGHLAND PARK RAILWAY CO., Appellant.

1. **Railroads:** FORCIBLE EJECTMENT FROM CAR: EVIDENCE. The plaintiff was riding upon the defendant's car, having a pass which entitled her to ride without paying her fare. In an action for damages because of forcible ejectment, the testimony of the plaintiff was to the effect that the conductor, having demanded her fare, which was refused, said he would have to stop the train, and let her get off, that he did stop the train, but she made no move to get off, and thereupon the conductor took hold of her arm and said, "Come, come; don't be obstinate and delay the train;" and that he took hold of her arms and lifted her down. The conductor testified that he merely requested her politely to get off, which she did, and that he assisted her in so doing. *Held*, that the evidence was sufficient to warrant a verdict that the conductor used force in removing the plaintiff from the train.

2. ——: ——: DAMAGES FOR MENTAL SUFFERING. Where, in such case, the evidence showed that the plaintiff was a young girl, and that she was ejected from the car in the presence of her schoolmates and other acquaintances, though there was no malice or unnecessary rudeness on the part of the conductor; *held*, that although no wrong was intended, there was both indignity and insult in the sense that a

wrong was perpetrated in a humiliating and offensive manner, and that the mental pain necessarily resulting therefrom was a proper element of compensatory damages.

*Appeal from Woodbury District Court.*—HON. SCOTT M. LADD, Judge.

FRIDAY, FEBRUARY 3, 1893.

THE defendant company operates a motor line of road from Sioux City to Riverside Park, a distance of about four miles. The next friend, by whom this suit is maintained, is the mother of Dora A. Curtis. The father of Dora was the holder of an annual ticket on the line of road as follows:

"$25.00                                                    $25.00
"Sioux City and Highland Park Railway Company.
  "Pass W. H. Curtis and family. Annual ticket. Good from January 1, 1889 to January 1, 1890.
                                        "S. B. JACKSON,
                      "Superintendent and Gen'l Manager.
  "No. 6."

In consequence of a change in the management of the road, a misunderstanding obtained as to the rights of the holders of such tickets, as that they should be used only from outside stations to the city, and from the city to these stations, and not from stations outside to points further from the city. The plaintiff and her mother entered the defendant's train at their station to go to Riverside, away from the city. They presented the ticket to the conductor, which, under his instructions from the management, was refused, and he demanded fare, which was also refused. Thereupon they were ejected from the train, and this action is for damages resulting. Other facts will be noticed in the opinion. From a judgment for the plaintiff, the defendant appeals.—*Affirmed.*

*J. H. & C. M. Swan,* for appellant.

*Willis G. Clark,* for appellee.

GRANGER, J.—I.    It is now conceded that the ticket on which the plaintiff sought passage to River-

1. RAILROADS: forcible ejectment from car: evidence.

side was valid for that purpose, and that the ejectment was wrongful.    It may be further stated that the act was not intentionally wrong, nor, in any sense of the term, in "bad faith."    It resulted from a mistaken conception on the part of the management of the rights of the plaintiff. It may also be stated that the conductor did only what was necessary to observe his instructions, acting without any indication of malice or ill will, and in as gentlemanly a manner as was consistent with the discharge of such a duty.    The district court charged the jury that, unless force was used to remove the plaintiff from the train, she could not recover, and this, very properly, is urged as the law of the case, because unquestioned.    The court submitted to the jury this question:    "Did Conductor Dorman, by the use of any force, remove Dora Curtis from the train?"    The jury answered, "He did."    The appellant, in argument, says:    "Under this instruction the verdict is not sustained by the evidence."    It is conceded that the conductor took hold of her, but the contention is whether he did so forcibly to remove her, or only to assist her to alight from the train.    The plaintiff introduced no evidence on this branch of the case.    Under the court's instruction, if the conductor only took hold of her to assist her to alight there could be no recovery. The conductor was a witness for the plaintiff, and he says he merely requested them politely "to get off," which they did, and he assisted them in so doing.    This occurred in a cut about four hundred yards from the train station, and the train was stopped for that

purpose. The conductor says the train consisted of three cars, and "very nicely loaded." As to the manner of removal the evidence is in conflict. The following is a part of the testimony of Mrs. Curtis:

"We got on the train at Emerson Heights. We took two seats. The car was crowded. There were three cars. I think there were back seats, where some people got off; and, after we sat down, the conductor came in and said, 'Ten cents, please, Mrs. Curtis, apiece; ten cents apiece.' He says, 'Please.' 'Well,' I said, 'what is that for?' He said that was the order, and I told him our fare was paid; I didn't propose to pay it again. And he said, 'Then I shall have to stop the train and let you get off.' I says, 'We want to go to the Park.' 'Well, then,' he says, 'I have to put you off.' 'Well,' I says, 'I suppose you can do that.' And so he rang the bell. Of course the train stopped, just in the cut of Emerson Heights. The cut was narrow and high, and he stepped back for us to get off, and we didn't make any move to get off at all, of course; but he took hold of Dora, and he says: 'Come, come, Miss Curtis; don't be obstinate and delay the train.' Then he stepped back for me to get off, and I told him I didn't propose to get off the train, and he put me off, too, and he went on, leaving us there in the cut. The embankment at that point, I should think, was twenty feet high. There was just space enough to stand between the edge of the bank and the side of the car. If you should stand still the car would not hit you, but I guess, if there had been another car to pass through the cut, we couldn't have stood. I don't think we could."

The testimony of the plaintiff, Dora, is corroborative of that given by her mother. Another witness, who was a passenger, repeats to some extent the talk as to the demand for the fare, and their claim that the ticket was all right, and says the conductor "stopped the train,

VOL. 87—40

and took hold of their arms, and lifted them down."
The testimony is such that the jury could believe the
removal was by force. If, when the train was stopped,
the conductor stood aside for them to alight, and they
did not attempt to do so, and he took Dora by the arm,
with the remark stated, intending, against her will, to
remove her, and she yielded only because of such inten-
ded force, it was a forcible removal. Whether or not
less than that would have been forcible we need not
say. We limit our holding by the rule of the instruc-
tion given.

II. The judgment is for one hundred and one
dollars. By a special finding it appears that one hun-
dred dollars of the amount is for "mental
pain endured." The court instructed, in
effect, that for "physical injury sustained
the plaintiff was only entitled to nominal damage, one
cent or one dollar;" and also that there could be no
allowance for exemplary damages. The court then
said: "In addition to the nominal damage above
referred to, you may allow her such an amount as will
compensate her for the mental pain, if any, suffered by
reason of the wrongful act of defendant." Complaint
is made of the instruction in so far as it allows damage
for mental suffering. It is in evidence that the plaintiff
felt quite keenly the result of her experience; that she
cried, and was in a condition of excitement for some
days, her manner being unusual, and she made inqui-
ries as to what people would think of it. It is said in
argument that, in the performance of the act on the
part of the company, there was "no insult, indignity,
or outrage of any kind offered." It is true there was
not in the sense of an intentional wrong, but there was
both indignity and insult in the sense that a wrong was
perpetrated in a very humiliating and offensive manner.
The removal, as it was made, under the immediate eye
of the public, naturally gave the impression that the

2. ——: ——: damages for mental suffer- ing.

plaintiff was attempting to purloin a ride on the defendant's road, and the plaintiff had a right to believe such an impression would prevail.   Among the passengers were her schoolmates and friends, and such an act, as to them and other observers, placed her in the attitude of being in the wrong, or the victim of an unprovoked insult.   It is this situation as to others in which she was placed by the acts of the defendant company that wounds the feelings, causing the suffering for which damages are recoverable.

It is to be kept in mind that these damages are compensatory, not punitive; and they are allowed and measured, not by the intent of the wrongdoer, but as a result of his wrongful acts; and hence no technical precision as to what constitues an insult or indignity, if, indeed, they are essential to a recovery, should control, but that which would be the equivalent of an insult or indignity in its effect upon the party injured.   We think it almost incredible that any person of ordinary pride and self-respect could thus be removed from the train without a feeling of deep humiliation, and a wounded pride, amounting to mental anguish.   Mental suffering, we know, is often poignant, and many times fatal to health or life.   The authorities seem to be somewhat in conflict, but we have discovered no reasoning to justify a distinction, nor can we imagine a reason why the law would compensate for a pain in the hand or foot, as a result of a wrongful act, and not, for mental suffering, equally severe and dangerous, where it is not evidenced by physical injuries, nor "indivisibly connected therewith."   It seems to us that this court has settled this question in harmony with this view.   In *Parkhurst v. Masteller*, 57 Iowa, 474, the court uses this language:   "There is no evidence of bodily suffering, but the instruction is not objected to on that ground.   The objection is that mental suffering not arising directly from bodily suffer-

ing or disability does not constitute a ground for actual compensatory damages. It is sufficient to say that upon a careful consideration of this question by this court in *McKinley v. C. & N. W. Railway Co.*, 44 Iowa, 319, it is held otherwise." By referring to the *McKinley case*, it will be seen that in that case there was physical injury, but the proposition of damages for "mental anguish arising from the nature and character of the assault" is discussed, and determined favorably to the holding of the district court in this case.

We think the judgment of the district court should be AFFIRMED.