Johnson, J.
There is no claim that the five cent piece which was tendered by plaintiff was not originally a genuine coin issued by the United States.
The testimony and an inspection of the coin disclose such genuine character. It has the appearance of being somewhat bruised and there is a slight crack from the rim toward the center.
The minor coins of the United States are provided for. by Section 3515, Revised Statutes of the United States, in which the alloy and weight are prescribed. Section 3587, Revised Statutes of the United States, provides that the minor coins shall *315 be legal tender at their nominal value for any amount not exceeding 25 cents in any one payment.
It is not doubted that a railway company may expel from its cars persons who refuse to pay the legal fare. Necessarily that inherent power is vested in the conductor employed by the company and placed by it in charge of the train or car. But if the company wrongfully expels one who is entitled to the rights of a passenger, it is liable in damages to such person, and this is so even if such expulsion is done through an error of judgment on the part of the conductor or agent in charge.
And where a passenger tenders to the conductor a genuine coin of the United .States, not so worn, defaced or mutilated, but -that its ’mint marks are plainly discernible and not appreciably diminished in weight, and such tender is refused and the passenger ejected on refusal to pay in other money, he may have an action of damages against the company. And this is so even if the conductor in good faith believed the coin to be counterfeit or not a sufficient coin.
In such case the passenger is not required to tender other money if the first coin tendered was sufficient. Chicago Union Traction Co. v. McClevey, 126 Ill. App., 21; Jersey City & Bergen Rd. Co. v. Morgan, 52 N. J. L., 60; Mobile St. Ry. Co. v. Watters, 135 Ala., 227; Atlanta Con. St. Ry. Co. v. Keeny, 99 Ga., 266.
In Jersey City & Bergen Rd. Co. v. Morgan, 52 N. J. L., 60, the court in the opinion say: “It seems by these statutes (U. S. Statutes) that so long as a genuine silver coin is worn only by *316 natural abrasion, is not appreciably diminished in weight and retains the appearance of a coin duly issued from the mint, it is a legal tender for its original value. The coin in question in this case was shown to the court and jury, but does not appear in the evidence to have been so worn that it was light in weight or not distinguishable as a genuine dime. ■ If' no limitation is put upon its circulation by the government it would seem none was intended so long as it was not defaced, cut or mutilated, and was only made smooth by constant and long continued handling and by being circulated as a part of the national currency.”
■ The question as to what treatment, usage or acts amount to mutilation of coins was before the court in United States v. Lissner, 12 Fed. Rep., 840, and the court in that case hold: “Where a coin which had been regularly coined at the mint was afterwards punched and mutilated and an appreciable amount of silver removed from it, and the- whole plugged up with base metal, or any substance other than silver, it is an act of counterfeiting; but it is otherwise where the hole was punched with a sharp instrument, leaving all the silver in the coin, through crowding it into a different shape.”
Now in this case as to the five cent piece or nickel, the bruise and the crack may have been caused by a blow from a hammer or other heavy instrument, but it retains all of its material and all of the evidences of genuine coinage, though the material is very slightly “crowded into different shape.”
*317 There is not such mutilation, defacing, punching or cutting as to deprive it of its legal tender character within any of the rules laid down in the authorities or the statute. The law does not require that minor coins tendered in payment of debt or for service which the person making the tender has the right to demand, shall be absolutely perfect.
It is contended by defendant in error that so long as a coin is in such condition that it would be redeemed by the United States Government, it does not lose its legal tender character.
The trial court appears to have adopted this as a reasonable test by which to determine the question. The United States Statutes provide that the treasury department may prescribe rules by which coin and paper money which may become unfit for circulation may be redeemed or exchanged, and such rules have been so prescribed. One of the provisions is that “pieces that are stamped, bent or twisted out of shape or otherwise imperfect, but showing no material loss of metal will be redeemed.”
We do not think that the existence of this rule, even though adopted under sanction of the statute, would justify the tender to a railway company or other creditor of a coin which “had become unfit for circulation,” and thus impose on the payee the burden of applying to the treasury department for a coin fit for circulation nor to impose on him the risk of failing to obtain it.
This view in a case where a piece had been torn from a one dollar bill, was adopted by the *318 court in North Hudson Ry. Co. v. Anderson, 61 N. J. L., 248.
In this case we think the evidence shows the coin was not so affected in any manner as to be deprived of its legal tender character and therefore the court did not err in its charge to the jury in that regard.
Plaintiff in error also urges that the court erred in its charge as to the measure of damages. The court charged that “if by the wrongful act of defendant, plaintiff was put off the car under circumstances which would naturally result in great fright and terror to the boy, he is entitled to have proper compensation for that injury.” It is contended that fright and terror are not elements that can- be taken into consideration in awarding compensation, and the case of Miller v. Ry. Co., 78 Ohio St., 309, is relied on in support of this contention. That case was an action for negligence. The court, Crew, J., points out that there was no claim that the negligence of the defendant was wilful or wanton. There was no intentional wrong. In the opinion many cases are examined and discussed, all of which are negligence cases and the conclusion of the court was that no liability exists for acts of negligence causing mere fright or shock where the negligent acts complained of are neither wilful nor malicious.
Such a rule is salutary and necessary in negligence cases. But the reasons for the rule do not apply in cases where the act complained of is not only wrongful but intentional and wilful. In such a case mental suffering and fright and terror *319 where they would naturally ensue as in case of an infant ten years old wilfully expelled from a car at night may be taken into account. 6 Cyc., 566; Curtis v. Ry. Co., 87 Ia., 622; Smith v. P., Ft. W. & C. Ry. Co., 23 Ohio St., 10; C., St. L. & P. Rd. Co. v. Holdridge, 118 Ind., 281; Sloane v. Ry. Co., 111 Cal., 668.
- We find no error in the record and the judgments of the courts below will be affirmed.

Judgment affirmed.

Spear, C. J., Davis, Shauck, Price and Donahue, JJ., concur.