## ST. LOUIS & S. F. R. CO. v. YOUNT.

No. 1110.   Opinion Filed November 18, 1911.

(120 Pac. 627.)

1.  **ACTION—Form of Actions—Abolition.**  The common-law rules of pleading and all distinctions in form required thereunder, and all distinctions between actions at law and suits in equity, are abolished by the statutes of Oklahoma, leaving but one form—a civil action—which consists in a statement, in a proper court, of the facts, showing, in plain, ordinary, and concise language, the injury complained of, the redress to which the plaintiff is entitled, the party liable therefor, and concluding with a prayer for the relief sought.

2.  **CARRIERS—Expulsion of Passenger—Damages—Nature of Action.**  In an action for damages for wrongful expulsion of a passenger from a train, where the plaintiff in his petition has placed himself clearly within the rules of procedure (chapter 87, Comp. Laws 1909; chapter 66, St. Okla. 1893), he cannot be precluded from recovery for humiliation and wounded feelings because of a doubt as to whether his suit was an action ex contractu or ex delicto.

3.  **SAME—Expulsion of Passenger—Damages—Humiliation.**  In an action for damages from being wrongfully expelled from a passenger train, where the passenger is without fault, and where recovery is warranted by the evidence, he may recover a reasonable amount for insult, injured feelings, and humiliation, in connection with the actual expense incurred by the delay, although the conductor who ejected him used no force or violence, and was without fault in the premises.

(Syllabus by Harrison, C.)

*Error from District Court, Comanche County; J. T. Johnson, Judge.*

Action by Paul Yount against the St. Louis & San Francisco Railroad Company.  Judgment for plaintiff, and defendant brings error.  Affirmed.

This action was begun in the district court of Comanche county on September 28, 1907, by Paul Yount against the St. Louis & San Francisco Railroad Company for damages in the sum of $1,041.98, by reason of being ejected from a passenger train on said railroad; and thereafter, on September 25, 1908,

in a jury trial, plaintiff recovered judgment in the sum of $500, from which judgment the defendant company appeals.

The petition in error contains the following assignments: First. The verdict of the jury is not sustained by sufficient evidence, and is contrary to law. Second. The court erred in his instructions given to the jury. Third. The court erred in refusing to give instructions numbered 1 to 4, and each of them, requested by plaintiff in error. Fourth. Error in the assessment of the amount of recovery; the same being too large. Fifth. Errors of law occurring at the trial, and duly excepted to by plaintiff in error at the time. Sixth. The court erred in overruling the motion of plaintiff in error for a new trial.

The evidence discloses that on July 2, 1907, Paul Yount and his brother Isom (Pete) Yount each purchased round trip tickets from Lawton, Okla., to St. Louis, Mo., from the defendant company's agent at Lawton; the tickets costing $27.85, each, to be good until October 28, 1907. The plaintiff below, in company with his brother Pete, took the train at Lawton on the day the tickets were purchased, and from there went to St. Louis. On their going trip, plaintiff's ticket was punched by the conductors on the different divisions along the road. The plaintiff had been instructed by the agent at Lawton to go to the agent at St. Louis and have his ticket validated before he took the train for the return trip; the plaintiff having, after he reached St. Louis on the going trip, visited his relatives in Indiana, traveling over a different road, and not using the same ticket. On his return from Indiana to St. Louis, he went to the agent at St. Louis, and had his ticket validated, as per instructions and according to the company's rules, preparatory for his return from St. Louis to Lawton. This was about July 17. After the train pulled out of St. Louis, and before reaching the next station, the conductor came around to take up the tickets. He took plaintiff's ticket first—that is, before looking at his brother's ticket—and informed plaintiff that it was "no good," and remarked, "On the bum"; whereupon Pete Yount, his brother, told the conductor that his was just like his brother's, and that they got them the

same time.  The conductor then took Pete's ticket, accepted it as good, and punched it.  Pete called the conductor's attention to some figures on the back, which figures had been made by the agent at Lawton, and asked the conductor to wire to the agent at Lawton and ask him if he and his brother had not bought tickets there.  This the conductor refused to do.  He told the plaintiff that he would have to get off at the next station or pay his fare, giving no further explanation, nor making any further remark than, "On the bum."  It is not shown clearly whether this remark was meant for the ticket or passenger.

The next station was the town of Pacific, Mo., and just before reaching the station the conductor came through, put his hand on plaintiff's shoulder, and informed him that he would have to get off at this station, or pay his fare.  The conductor gave no explanation to plaintiff of his conduct, or why he refused the ticket, or wherein the ticket showed to be not good, but simply informed him that he would have to get off the train, or pay his fare.  The plaintiff did not have money enough to pay for another ticket from there to Lawton; nor did he and his brother both have sufficient money to buy another ticket.

The conductor remained with him, or close to him, until the train stopped at the depot in the town of Pacific.  It being suggested to plaintiff by his brother that he had better get off than have a fight, plaintiff got off on the platform; the conductor and his brother following out on the platform; his brother telling plaintiff to remain there at Pacific until he reached Lawton, and he would have the agent wire transportation back.  Plaintiff remained at this place about three days before he received transportation from his brother at Lawton.  In the meantime he had done some little work shoveling coal at a mill.  While he remained at Pacific, he was out in cash something like $4, and the ticket from Pacific to Lawton cost him $17.98.  In addition to this outlay, he claimed, in his petition and in his testimony, to have been damaged in the sum of $7 to $10 per day while detained at Pacific in loss of time, and to have been damaged in the sum of $1,000 for humiliation, mental suffering, and dis-

grace from being ejected from the train in the presence of other passengers. The fact also appears that the conductor did not assault him, or make any threats of assault, used no violence, nor showed any malice, but simply informed him that he would have to get off the train, or pay his fare. It further appeared that there were some marks or punches on the ticket which appeared to the conductor in question to have been made by some other conductor over the same division; this being the reason assigned by the conductor in his testimony for not accepting the ticket. These are the material facts, and about all the material facts in the case.

*W. F. Evans, E. T. Miller,* and *R. A. Kleinschmidt,* for plaintiff in error.

*Fred R. Ellis,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). To go at once into an analysis of the proposition involved herein, the argument of counsel for plaintiff in error resolves itself into this position: That this is an action *ex contractu* and not *ex delicto,* but if treated as an action in tort, then the verdict is not supported by the evidence, and if as an action on contract, then the measure of damages is the actual expense incurred for board, lodging, and loss of time occasioned by the delay and the cost of another ticket. Therefore let us first determine the form of action, then determine whether or not the verdict is excessive.

To determine the form of the action, we will look to the statutes, as aided by the common law, and as construed by the courts. To determine whether the verdict is excessive, we will look to the decisions of the courts, as applied to similar conditions of fact. As to the first proposition, Comp. Laws 1909, sec. 5534:

"The common law, as modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be ap-

plicable to any general statute of Oklahoma, but all such statutes shall be liberally construed, to promote their object." (St. Okla. 1893, sec. 3874.)

Section 5542:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing are abolished; and in their place shall be, hereafter, but one form of action, which shall be called a civil action." (St. Okla. 1893, sec. 3882.)

Section 5625:

"The rules of pleading heretofore existing in civil actions are abolished; and hereafter, the forms of pleading in civil actions in courts of record, and the rules by which their sufficiency may be determined, are those prescribed by this Code." (St. Okla. 1893, sec. 3963.)

Section 5626:

"The only pleadings allowed are: First, the petition of plaintiff. Second, the answer or demurrer by the defendant. Third, the demurrer or reply by the plaintiff. Fourth, the demurrer by the defendant to the reply of the plaintiff." (St. Okla. 1893, sec. 3964.)

The object of the Legislature in enacting these statutes was not only to abolish distinctions between actions at law and suits in equity, but also to relieve litigants of the intricacies and technical distinctions involved in common-law rules of pleading, and to provide a plainer, simpler, more speedy, and less cumbersome system of procedure, by which their rights might be determined. Thus the abolition of all former distinctions in pleading and forms of action leaves but the one form—a civil action—which consists in a statement, in a proper court, in plain, ordinary, and concise language, of the facts showing the injury complained of, the redress to which the litigant is entitled, the party liable therefor, and concluding with a prayer for the relief sought.

These statutory requisites being complied with, the litigant has placed himself within the cognizance of the court, and his rights are to be determined, under the law, from the facts, conditions, and circumstances involved. In determining the rights of parties from a given state of facts, however, the courts quite frequently seek light from the decisions under the common law;

in fact, it often becomes necessary to resort to distinctions made under the common law for light on a given proposition. Not so much, however, in recognition of the present existence of these distinctions, nor of the necessity of maintaining such distinctions under the Code, but to be aided thereby in a proper adjudication of the rights of parties to a given state of facts. The rights of parties under our statutes are not determined by the form of the action, but from the facts in the case, as governed by statute, aided by the decisions under similar circumstances. These rules of statutes are mandatory with the courts and redressive to litigants; and where a party to an action has brought himself clearly within them he cannot be denied the right to have his grievances determined by them. There is nothing accomplished by the adoption of the Code of Procedure, if the intricate distinctions and cumbersome forms of common-law pleading are still to be maintained. If it were necessary to maintain them, in order to determine rights which cannot be determined or obtained under our code procedure, then our Code is inadequate. But such is not the case. Any right which could be obtained under the common-law system of pleading can be as easily obtained under our code procedure. Any wrong which could be redressed under the common-law system can be as speedily and adequately redressed under our Code, possibly much more so; the Code being broader, simpler, more liberal, and more comprehensive. Then why maintain those distinctions in mere matters of form of pleading? Is it necessary to do so? Is it contemplated by statute? Is it allowed by statute? We are constrained to answer in the negative.

It is true, as stated above, that courts, in determining the rights of parties from certain condition of facts, quite often, and we might say universally, turn to the common-law precedents to ascertain what the courts, governed by the distinctions made in forms of pleading under the common law, have held under the same circumstances. But in such cases it is not for the purpose of maintaining those distinctions of forms, but to find out what a court, compelled under the common law to recognize those dis-

tinctions in forms of pleading, has held, where the facts were the same. For example, what has been the holding under the common-law pleading where a passenger has been wrongfully ejected from a train because of an apparently defective ticket, and where such defect has not been caused by the plaintiff, but by the negligence or incompetence of the conductor on the road, and where the ejected party has brought suit against the road, under a common-law pleading, for tort; or, on the other hand, under the same condition of circumstances, what has been the judgment of the court where the party brought an action *ex contractu*? The decisions of the courts in common-law jurisdictions in such cases are an aid to our statute in adjudicating the rights of parties to an action. This, we think, is the object and end to be obtained. And the right of the plaintiff below to recover, if he had a right of recovery, could not be denied him because of the possible doubt whether, under the common-law pleading, his action would have been *ex contractu,* and not *ex delicto*.

The next question is whether the verdict is excessive. To aid us in a determination of this question, we must look to the decisions, and see what the courts of last resort have held under similar circumstances. Counsel for plaintiff in error cites a number of cases in support of his contention that plaintiff could recover, if anything, only the actual damages sustained in expenses occasioned by the delay and the cost of another ticket. In most of these authorities, however, there was a manifest fault on the part of the plaintiff or on the part of the passenger ejected, and they are not therefore applicable to the case a bar. Some authorities are cited which hold that a passenger, under a similar state of facts, could not recover other than the actual expense incurred by the delay. In these we cannot concur. We think the weight of authorities, and by far the better-reasoned authorities, hold the contrary. In the case at bar, the evidence discloses no fault on the part of the passenger. He had purchased a ticket for a round trip. This implied a contract on the part of defendant to carry him to St. Louis and return. If, in fact, the ticket had been punched in the wrong

place, it was done by a conductor in defendant's employ along the same line on the forward trip; and the fact that one conductor on the line had made a mistake and punched the ticket in the wrong place might reasonably justify a doubt as to whether another conductor on the same line was correct in his judgment as to where the ticket should have been punched. One conductor is presumed to be as competent as another. The evidence does not show conclusively that the ticket in fact had been punched in the wrong place, and we are unable to say which conductor was in error. The facts are that plaintiff was ejected from the train and delayed in his return through the error of one of two conductors. This being an action against the defendant company for wrongful ejection from the train, it does not matter which of the two conductors was in error. The passenger, being guilty of no fault, was expelled through the fault of the defendant company, through its employees, and under the weight of authorities is entitled to recover such sum as, under the evidence, will compensate him in damages, and the insult, humiliation, and wounds to his feelings may be considered in reaching an estimate. The fact that the conductor who ejected him was correct in his judgment, and was personally without fault in the premises, does not relieve the carrier company from liability; nor does the fact that force, violence, or assault was not used, because unnecessary, relieve the company from liability for compensatory damages to his feelings. He was told by the conductor that he would have to leave the train, or pay his fare. He had no money with which to pay his fare. He had a ticket which, but for the fault of the carrier's agent, was evidence of his right to transportation; and the fact that he left the train, rather than provoke a breach of the peace, did not lighten his humiliation nor palliate the wounds to his feelings. Moore on Carriers, 887; *Railroad Company v. Flagg,* 43 Ill. 364, 92 Am. Dec. 133; *Curtis v. Railroad Company,* 87 Iowa, 622, 54 N. W. 339; *Railroad Company v. Fix,* 88 Ind. 381, 45 Am. Rep. 464; *Railroad Company v. Wilsey,* 9 Ky. Law Rep. 1008; *Wilson v. Railroad Company,* 5 Wash. 621, 32 Pac. 469; Jaggard on Torts,

vol. 1, 370; *Trigg v. Railroad Company,* 74 Mo. 147, 41 Am. Rep. 305; Hale on Damages, 261-263, and authorities cited; Cyc. vol. 6, p. 555, and notes; *Chicago, etc., R. Co. v. Holdridge,* 118 Ind. 281; Am. & Eng. Enc. of Law (2d Ed.) vol. 5, 718.

From the above authorities, we are of the opinion that, under the evidence in this case, the injury to plaintiff's feelings was a proper element for compensatory damages, the amount thereof having been determined by the jury, from the facts, under proper instructions; and, there being no material error in the record, the judgment of the court below is affirmed.

By the Court:   It is so ordered.

All the Justices concur.