## ST. LOUIS & S. F. RY. CO. v. HENRY.

No. 4060. Opinion Filed May 18, 1915.

(149 Pac. 132.)

1. CARRIERS—Passenger Alighting at Wrong Station—Negligence of Brakeman—Liability of Carrier. Where a brakeman on approaching a stop asks a passenger where she wants to get off, and she tells him, and he says "this is the place," and upon such direction she alights from the train but discovers it is a mistake, and informs the brakeman that he had made a mistake, that that is not her destination, it is his duty to permit her to return to the car and complete her journey; and if he does not do so the company will be held liable.

2. CARRIERS—Passengers—Personal Injuries—Excessive Recovery. Where a woman is put off the train, through the negligence and misdirection of the employees operating the train, at a flag switch, which is not her destination, nor the point her ticket calls for, and is not permitted to re-enter the car and complete her journey, though the mistake is known to the train employees before the train leaves the switch, and she is left in the dark alone, with no depot, no house, no habitation in sight, no protection, and is compelled to carry her baggage a half mile in the dark before reaching a house, she is entitled to damages for the physical pain and distress suffered, and a verdict of $300 is not excessive.

3. PLEADING—General Allegation—Evidence. When a petition pleads, in general terms, facts sufficient to constitute a cause of action, and no motion is made to make it more definite and certain, testimony which tends to directly support the allegation will not be excluded because not specifically pleaded.

4. TRIAL—Inapplicable Instruction—Refusal. It is not error to refuse to give an instruction, which is sound as an abstract proposition of law, but which is not applicable to the facts in the case being tried.

(Syllabus by Brett, C.)

*Error from District Court, Jackson County;*

*Frank Mathews, Judge.*

Action by Mollie Henry against the St. Louis & San Francisco Railway Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt* and *J. H. Grant,* for plaintiff in error.

*S. B. Garrett,* for defendant in error.

BRETT, C. This is an action by the defendant in error, who will hereinafter be referred to as plaintiff, against the plaintiff in error, which will hereinafter be referred to as defendant, to recover $952.50 damages on account of the alleged negligence of the defendant in putting the plaintiff off its train at a place called Hightower's Switch, instead of Altus, her proper destination, and the place to which she had purchased a ticket.

The material facts as they appear from the evidence, briefly stated, are: That on July 19, 1910, the plaintiff purchased a round-trip ticket for herself from Altus, Okla., to Chattanooga, Tenn., and two half-fare tickets for her two children, who were of the ages of 11 and 13 years respectively. That on her return, September 22, 1910, she boarded the defendant's train at Oklahoma City, and delivered to the conductor her tickets which called for Altus as her destination. She testifies: That on the journey she asked the conductor what time the train would reach Altus. He told her that they were due there at 5:45, but were about two hours late. Later she asked the brakeman the same question, and received about the same reply. That some time after they had passed Headrick, the last regular stop before reaching Altus, she noticed the door open, and the brakeman walked back to her, put his hand on the seat, and said, "Lady, where do you get off? and she replied, "Altus," and he said, "This is the place." He asked if she had any baggage or bundles, and she

told him she did, and pointed out her suit case to him, and began to make preparations to get off, and her son, Tom, who was sitting in front of her, said, "What are you going to do?" and she replied, "We are at Altus." The brakeman then took a portion of her bundles and preceded her to the door. She helped Tom out, and when he had alighted he said, "This is not Altus," She made him no reply, but Annie was helped out, and she said, "This is not Altus," and Tom replied, "I knew it wasn't." It was dark, and she said to the brakeman, "This is not Altus," and he said, "I beg your pardon; you told me you wanted to gee off at Hightower's Switch;" and I said, "I didn't know there was such a place," and said, "What am I going to do?" and he just gave his signal and "left his stool there that you step out on." She said, when she saw he had left the stool, she expected them to return; but they went on and left her and the two in the dark. That she did not know where she was. There was no depot there, no other person there, and no house or habitation in sight. She picked up her baggage and went down the railroad until she came in sight of a light, which seems to have been about one-half mile from the switch, and which proved to be the section house. She procured lodging there for herself and the children for the night, for which she paid 50 cents, and procured a surrey to come from Altus the next day for her. She claims the walk and carrying her baggage caused her foot to give her pain; that when the train left and she discovered her situation, she gave away to her feelings, and was in distress. The conductor testifies that some lady, after leaving Snyder, had told him she wanted to get off at the second crossing beyond Hightower's Switch; that he told her he could not let her off there, but would let her off at the switch, and she told him she believed she would get off there; and he told the brakeman that he had a lady for Hightower's Switch, and when they arrived at Hightower he was at the front of the car, it was dark, and he saw a lady getting off, and did not know he was unloading the wrong woman. The brakeman said the conductor told him there was a

woman and two kids to get off at Hightower; that when the signal was given to stop, he saw the plaintiff making a move like she was going to get off, and asked her if she was going to get off there, and she said, "Yes;" that he never told her that was Altus, and she never told him Altus was her destination; that he had no conversation with her, and denies she told him that she wanted to go to Altus, after she alighted from the train, and that before stopping he announced the name of the switch, and denies leaving the stool. The plaintiff in rebuttal says, if he announced the name of the switch, she never heard it, and reaffirms her statements given in her former testimony. The station agent at Altus testified that the son, who was 13 years old, should have paid full fare of $34.40 for his ticket, instead of $17.20.

We deem it unnecessary to go into the details of the pleadings at this time. The petition contains the usual allegations, asking for damages, for her expenditures, for physical pain and suffering, for mental anguish, and for exemplary damages. The answer is a general denial, counterclaim, and set-off, and asks judgment against the plaintiff for $17.20, the amount alleged to be due by reason of the 13 year old son riding on half fare, when, it is alleged, he should have paid full fare. For reply, plaintiff pleads a general denial, and that the matter peaded as counterclaim and set-off, in defendant's answer, does not grow out of the transaction upon which the plaintiff bases her suit. The case was tried to a jury, which returned a verdict in favor of plaintiff for $300, upon which judgment was rendered, and from which the defendant appeals to this court. Of the errors assigned there are but four urged in defendant's brief. Of these, the first and second may be considered together.

1. The first being the damages are excessive and appear to have been given under the influence of passion and prejudice; and the second that the verdict is not sustained by sufficient evidence,

and is contrary to law. We have examined the evidence carefully and find that the issues of fact were sharply drawn. One state of facts was testified to positively by the plaintiff, and she was equally as positively contradicted by the brakeman upon almost every statement she made. The jury had to disregard the testimony of one or the other. Both could not be true. There was no common ground upon which they could harmonize the testimony of these two witnesses. If the one was true, the other was false. And if the testimony of the plaintiff be taken as true, and the attempted explanation of the defendant be disregarded, then she was entitled to recover. If, however, the brakeman's testimony be taken as true and plaintiff's evidence disregarded, she was not entitled to recover; and the jurors, who saw the witnesses on the stand, observed their deportment, their candor or lack of candor, seem to have believed the plaintiff, and to have disregarded the testimony of the brakeman. They were the exclusive judges of the facts proven, the credibility of the witnesses, and the weight and value to be given to their testimony, and they decided against the testimony of the brakeman. And this court is bound by the findings of the jury as to the facts; and, the plaintiff's testimony being taken as true, we do not think their verdict was excessive, or indicated that they were influenced by passion or prejudice.

Even if it be admitted that the plaintiff was unloaded at this switch through mistake, yet when she informed the defendant's agent, and made him understand that a mistake had occurred, and that Altus was her destination, it was his duty to have permitted her to get back on the train, instead of begging her pardon for the mistake, and signaling the train to start, and leaving her there alone in the dark. We cannot agree with counsel that it is an inconsequential matter for a carier to unload a female passenger, before she reaches her destination, in a strange place, in the dark, with no protection, no building, and no habitation in sight.

Counsel for defendant in their brief invoke the Golden Rule,

and seem to insist upon its application in their behalf by this court. While it is true that it is the sublimest doctrine ever enunciated for the government of human conduct, yet we are sorry to say it is not statutory in Oklahoma. And, if it was, we may observe, in passing, that if it had been adhered to by the defendant at Hightower's Switch, it is probable that it would not be necessary for them to invoke it here. *St. L. & S. F. Ry. Co. v. Yount,* 30 Okla. 371, 120 Pac. 627, is a case in which a young man had purchased a round-trip ticket from Lawton, Okla., to St. Louis, Mo., and on his return the conductor examined his ticket, and for some reason which does not clearly appear made the remark "On the bum," and told the young man he would have to pay the fare or be ejected. He did not have the money to pay the fare, and at the next station, without any resistance on his part or any force or insult on the part of the conductor, he was ejected, and remained there about three days before receiving transportation from Lawton, and a verdict in his favor of $500 was sustained by this court. The same question was raised in that case as is now under consideration, and Commissioner Harrison, in a well-considered opinion in passing upon the question, says:

"The passenger, being guilty of no fault, was expelled through the fault of the defendant company, through its employees, and under the weight of authorities is entitled to recover such sum as, under the evidence, will compensate him in damages, and the insult, humiliation, and wounds to his feelings may be considered in reaching an estimate; nor does the fact that force, violence, or assault was not used because unnecessary, relieve the company from liability for compensatory damages to his feelings. He was told by the conductor that he would have to leave the train, or pay his fare. He had no money with which to pay his fare. He had a ticket which, but for the fault of the carrier's agent, was evidence of his right to transportation; and the fact that he left the train, rather than provoke a breach of the peace, did not lighten his humiliation nor palliate the wounds to his feelings. Moore on Carriers, 887; *Railroad Company v. Flagg,* 43 Ill. 364, 92 Am. Dec. 133; *Curtis v. Railroad Company,* 87 Iowa, 622, 54 N. W.

339; *Railroad Company v. Fix*, 88 Ind. 381, 45 Am. Rep. 464; *Railroad Company v. Wilsey*, 9 Ky. Law Rep. 1008; *Wilson v. Railroad Company*, 5 Wash. 621, 32 Pac. 469, 34 Pac. 146; Jaggard on Torts, vol. 1, p. 370; *Trigg v. Railroad Company*, 74 Mo. 147, 41 Am. Rep. 305; Hale on Damages, 261-263, and authorities cited; Cyc. vol. 6, p. 555, and notes; *Chicago, etc., R. Co. v. Holdridge*, 118 Ind. 281, 20 N. E. 837; Am. & Eng. Enc. of Law (2d. Ed.) vol. 5, p. 718. From the above authorities, we are of the opinion that, under the evidence in this case, the injury to plaintiff's feelings was a proper element for compensatory damages, the amount thereof having been determined by the jury, from the facts, under proper instructions; and, there being no material error in the record, the judgment of the court below is affirmed."

The facts in the case at bar we think present a much stronger case than the one above quoted from. This is a woman who, without any fault on her part, was told she had reached her destination. When she alights from the train and sees the mistake she informs the defendant of that fact, its agent begs her pardon, assures her that it is her mistake, that she told him she wanted to get off there, signals a departure, moves on, and leaves her there alone in the dark, seemingly indifferent to all her rights and its obligations to her. Under these facts, we think the jury were justified in the verdict returned.

2. The next assignment of error is "error of law occurring at the trial and excepted to by defendant." The first complaint under this assignment is that certain immaterial evidence was admitted concerning the plaintiff's physical suffering, and that it was immaterial because it was not specifically pleaded. We have examined the evidence complained of, and the pleadings of both parties, and think that under the state of the pleadings the evidence was admissible. Had the defendant wanted to be informed by the pleading specifically, as to what her physical suffering consisted of, it had the right to ask that the petition be made more definite and certain, and in the absence of such a motion the court properly admitted the evidence.

The second complaint under this assignment is that the court erred in refusing to give three requested instructions. As to the first requested instruction counsel cite no authority in support of their contention, and we shall consider it no further than to say we think it was properly refused.

The second request is in effect that the defendant is entitled to a set-off and counterclaim in the sum of $17.50 by reason of plaintiff's purchasing a half-fare ticket for her son Tom, when she should have purchased a full fare ticket for him. Under this assignment counsel cite only the statute on counterclaim and set-off, and cite no authority in support of their proposition that it was error to refuse to allow a contract to be set off against a tort. Besides the boy is claiming nothing in this action, and the purchase of each ticket was a separate contract, and no fraud is claimed in the purchase of the plaintiff's ticket. We think the instruction was properly refused.

The third request is:

"You are instructed that while it is the duty of the employees of the carrier to announce the station to which they undertake to carry passengers, it is not required of them that they shall see the passengers off at their destination, and a failure to see that they do get off at their proper destination gives no right of action against the company."

As a matter of abstract law there is no question that this instruction is correct. But it is not applicable to the facts in this case. This suit is not based upon the failure of the defendant to properly call the station, but upon the fact that the defendant's agent misdirected the plaintiff, and told the plaintiff, after being informed by her that she wanted to get off at Altus, "This is the place." And upon the further fact that after she had alighted from the train, and he had been told repeatedly that her destination was Altus, he declined to correct the mistake, and permit her to re-enter the car, and left without taking her on board, wholly unmindful of her rights, and his obligation to her.

In view of what has been said we deem it unnecessary to consider the fourth assignment, which is that "the court erred in overruling defendant's motion for a new trial."

Finding no prejudicial error in the record, we recommend that judgment be affirmed.

By the Court: It is so ordered.