[L. A. No. 1198.    In Bank.—April 23, 1904.]

# LEVI MONTGOMERY and Wife, Respondents, v. C. S. Mc-LAURY and J. L. McLAURY, Appellants.

Exchange of Lands—Fraud—Rescission—Damages—Cancellation of Mortgage—Pleading—Ambiguity Waived—Surplusage.—In an action for fraud of the defendants in the exchange of lands, in which a judgment was rendered canceling a mortgage and awarding damages in a specified sum, any uncertainty and ambiguity in the complaint was waived by failure to demur on that ground; and where the pleader evidently intended both to state facts entitling him to a rescission, for which he prayed, and also to state facts entitling him to the cancellation of the mortgage and to damages for which he prayed, and it appeared from the findings that a rescission offered by the plaintiffs had been rendered impossible by the acts of the defendants, it is proper, after the trial of the issues, in support of the judgment, that those portions of the complaint which were framed with a view to rescission should be treated as surplusage.

Id.—Averment of Offer to Reconvey — Offer to Do Equity.—The averment of the complaint that the plaintiffs offered to reconvey the lands in respect of which they had been defrauded, on condition of a reconveyance by defendants to plaintiffs of the lands which plaintiffs had conveyed to them, is not out of place in an action based upon an affirmance of the contract, for the relief awarded by the judgment, as showing that they were willing and offered to do equity.

Id.—Jurisdiction of Equity—Cancellation of Mortgage—Damages. —Equity has jurisdiction to grant the relief of the cancellation of a mortgage in respect of which the plaintiffs had been defrauded in the exchange of lands, and, having jurisdiction for that purpose, it has jurisdiction for all purposes, and may award full compensation in damages for the fraud committed.

Id.—Election—Rescission — Affirmance of Contract — Estoppel—Election of Remedy.—The rule that a party defrauded in a contract, who has elected to affirm it after full discovery of the fraud, cannot afterwards claim a rescission, is based upon the doctrine of estoppel; but there is no rigid and inexorable rule of estoppel as to the election of remedy in cases of fraud. An election to disaffirm a contract induced by fraud, and an effort to obtain a rescission of it, will not, if resisted, and especially if rendered impossible or difficult or of doubtful advantage by the act of the guilty party, bar an action and judgment based upon a subsequent affirmance of the contract, and the commencement of such action is in itself an affirmance.

Id.—Fraud not Condoned.—The rule that fraud is condoned by dealing with the defrauded party after full discovery of the fraud, and that such condonation precludes both rescission and an action for deceit for the fraud, has no application where the only acts of such dealing were prior to the actual discovery of the fraud.

Id.—Doctrine of Relation Inapplicable to Action for Deceit.—The doctrine of relation applicable to an action based upon a rescission that a vendee who had notice that the land fell short in some respects was put upon notice of all that could have been discovered by a prompt investigation, has no application to an action for deceit based upon the affirmance of the contract.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying a new trial. J. S. Noyes, Judge.

The facts are stated in the opinion of the court.

Lucius K. Chase, for Appellants.

The complaint is inconsistent, and does not state a cause of action for deceit, because it is framed in rescission. The plaintiff cannot have both remedies. (*Kinney* v. *Kiernan*, 49 N. Y. 165; Herman on Estoppel, sec. 1065; *Westerfeld* v. *New York Life Ins. Co.*, 129 Cal. 68, 81.) The right to rescind the contract was barred by laches. (Civ. Code, sec. 1691; *Bailey* v. *Fox*, 78 Cal. 389; *Gamble* v. *Tripp*, 99 Cal. 223; *Martin* v. *Burns Wine Co.*, 99 Cal. 355.) The purchaser having commenced an investigation for himself, is not injured by the vendor's representations. (Pomeroy's Equity Jurisprudence, sec. 893; *Farrar* v. *Churchill*, 135 U. S. 609; *Colton* v. *Stanford*, 82 Cal. 383.[1]) The plaintiffs were chargeable with knowledge of all the facts when part of the alleged fraud was discovered. (*Ruhl* v. *Mott*, 120 Cal. 668; *Mohr* v. *Boyd*, 74 Cal. 171; *Sheftel* v. *Hays*, 58 Fed. 461; *Rugan* v. *Sabin*, 53 Fed. 415.)' The plaintiffs condoned and waived the fraud by inconsistent dealings with the alleged defrauding party. (*Schmidt* v. *Mesmer*, 116 Cal. 270; *Harrington* v. *Patterson*, 124 Cal. 544; *Kingman Co.* v. *Stoddard*, 85 Fed. 740.)

George A. Skinner, for Respondents.

The complaint undoubtedly states a cause of action for cancellation of the mortgage and the damages granted, and

[1] 16 Am. St. Rep. 137.

supports the judgment. (*Buena Vista etc. Co.* v. *Tuohy,* 107 Cal. 244, 245; 8 Am. & Eng. Ency. of Plead. & Prac., pp. 897-908.)

BEATTY, C. J.—This is a litigation arising out of the alleged fraud of the defendants, C. S. and J. L. McLaury, in inducing the plaintiffs by false representations to exchange their Minnesota farm for thirty-five acres of land in Riverside County in this state. The defendants appeal from a judgment canceling a mortgage on the Riverside land, and awarding damages in the sum of eighteen hundred dollars. They also appeal from an order denying their motion for a new trial.

The agreement for the exchange of lands, and the deeds, mortgage, note, etc., by which it was effected, were made and executed in Minnesota, where all the parties were. C. S. McLaury, who conducted the transaction on behalf of himself and J. L. McLaury, visited the farm of the plaintiffs and had an opportunity of inspecting it. The plaintiffs knew nothing in regard to the Riverside lands, except what he told them, until after the exchange of deeds on the third day of March, 1899. They claim that he made numerous false representations as to the condition, character, and value of the Riverside land for the purpose of inducing them to make the exchange, that they relied upon his representations, and as soon as they discovered their falsity offered to rescind.

The terms upon which the exchange was made were substantially as follows: The McLaurys valued their Riverside land, with its attendant water-right, at ten thousand dollars. That was their price for it, and if it had been such as, according to plaintiffs' allegations, they represented it to be, it was fully worth the price. Plaintiffs valued their farm at eight thousand dollars, but it was encumbered by a mortgage for two thousand dollars, and they made it an indispensable condition of the trade that with the farm the defendants must take their livestock, farming implements, etc., at a valuation of one thousand dollars, to be paid in cash. Defendants agreeing to this condition, conveyances of the lands were exchanged, and to make up the difference of values the plaintiffs executed their note for four thousand dollars, secured by mortgage on

the Riverside lands. Defendants paid one thousand dollars for the personal property on the farm and took possession, while plaintiffs started to California to take possession of their orange-grove. They arrived at Riverside on March 21, 1899, and on the following day Levi Montgomery visited the grove, which he could see fell short of the description in some particulars, but he claims that he was prevented by sickness, absence, and other causes from discovering the full extent of the imposition practiced upon him until more than six months thereafter.

The fact seems to be, according to the findings of the court, which are sustained by the evidence, that the Riverside land at the date of the exchange was worth less than four thousand dollars, and the defendants do not claim it was worth more than six thousand dollars. They, however, deny the false representations, and allege that the plaintiffs did not rely upon their statements, but made independent investigation through their own agents; that they took possession of the land, and after full opportunity to examine, and actual discovery of, its real condition and character, ratified the exchange in various ways. They claim, also, that any right plaintiffs may have ever had to rescind was lost by laches in failing to give any sort of notice of their dissatisfaction with their bargain until more than nine months after their first visit to the land and full opportunity to ascertain its true condition. It was on the 21st of December, 1899, that Montgomery's attorney sent a notice to defendants—the sufficiency of which is a question in the case—to the effect that plaintiffs desired to re-exchange their lands, or, if that could not be done, they would demand compensation for the damage they had sustained. In answer to this offer, or demand, defendant's informed plaintiffs that they had sold and conveyed the Minnesota property to third parties; in other words, that they could not rescind even if the plaintiff had a right to demand rescission, which they denied.

Thereupon this action was commenced, and the very first question in the case is as to the real character of the action—whether it is an action to enforce a rescission, or an action for damages for deceit, based upon an affirmance of the contract.

The appellants contend that although the complaint fails to state facts sufficient to warrant a decree of rescission, it was nevertheless framed upon that theory, and contains allegations entirely inconsistent with a right to recover in an action at law for deceit. The respondents, on the other hand, claim that their action is based upon an affirmance of the contract, and that they are seeking damages, not rescission.

We find ourselves unable to agree entirely with either contention. It seems perfectly clear from the whole frame of the complaint, no less than from the specific relief which it prays, that the intention of the pleader was to state facts entitling him to the rescission which he prayed. But at the same time he stated facts showing that the plaintiffs had been damaged in the sum of seven thousand dollars, and since he prayed also for the recovery of that amount of damages, it would seem that the theory of the complaint was to set forth all the facts surrounding the transaction by which the exchange of lands was effected, and to pray for any and every kind of relief to which, upon the facts, the plaintiffs might be found entitled. In most cases this is a correct theory of pleading under our system of practice, which recognizes but one form of action—an action on the case. But it sometimes happens that a party seeking redress for an injury is obliged to make an election between two inconsistent positions, and planting himself firmly upon one to definitely renounce the other before he can claim relief in any form. Such, appellants contend, is the case here. The doctrine is well settled, they say, that one defrauded in a bargain is restricted to one of two remedies, between which he must make an election before he can institute an action. He may affirm the contract and have his action at law for damages for the deceit, or he may disaffirm the contract and sue in equity for a rescission, but he cannot pursue both remedies at the same time, nor either until he has affirmed or disaffirmed the contract; for until he affirms he has no cause of action for the deceit, and until he disaffirms he has no right to a rescission. Arguing from these premises, appellants contend that the complaint of respondent fails to state any cause of action; because, as they say, it shows that any suit for rescission is barred by laches, besides being unsupported in other particulars,

while at the same time facts are alleged totally inconsistent with that affirmance of the contract necessary to sustain an action for deceit.

It must be conceded that the complaint exhibits the fault of uncertainty and ambiguity in a marked degree, but the failure of appellants to demur specially upon that ground deprives them of any right to raise that objection after trial of the issues made by their answer. The only question now to be considered is whether the facts alleged in the complaint, and found by the court on sufficient evidence, will support the judgment. For there is no such rigid and inexorable rule as to election of remedies in cases of fraud as that for which the appellants contend. It is undoubtedly true that when one who has been defrauded in a contract elects to affirm it after discovery of the full extent of the fraud he cannot afterwards claim a rescission. This is simply a result flowing from the general doctrine of estoppel. But an election to disaffirm a contract induced by fraud, and an effort to obtain a rescission, will not, if resisted, and especially if rendered impossible or difficult or of doubtful advantage by the act of the guilty party, bar an action based upon a subsequent affirmance of the contract, and the commencement of such an action is in itself an affirmance. It is not denied that the complaint in this case contains every allegation necessary to sustain an action for deceit, but appellants contend that other allegations which it contains, as well as its specific prayer for relief, show that the contract has been disaffirmed, and, therefore, that it will not sustain a judgment based upon the theory of affirmance. At the same time that appellants insist upon this view, they contend, as above shown, that not only are the facts alleged insufficient to sustain a decree of rescission in other respects, but they show affirmatively that the right to rescind is barred by laches. Conceding this latter contention to be well founded, there does not seem to be any good reason why, after a trial of the issues and after findings by the court which show that a rescission has been made impossible by the acts of the appellants, those portions of the complaint which are framed with a view to rescission may not be treated as surplusage.

The case of *Westerfeld* v. *New York Life Ins. Co.*, 129 Cal.

68, is thought to be opposed to this mode of avoiding the difficulty, but it is not. The trouble in that case was, that it not only presented the same fault in pleading that is repeated here, but there was also an error in the instruction to the jury as to the rule of damages which vitiated the verdict on the theory of an affirmance of the contract. The contract in question there was a compromise of a disputed claim upon a life-insurance policy. The plaintiff had not taken the steps necessary to a rescission, but sought to recover, and did recover, under an erroneous instruction of the court, the full amount of the policy, less what he had accepted by way of compromise. This he might have been entitled to in case of rescission, but the measure of damages in an action for deceit was only the actual value of his disputed claim less the amount received on the compromise, which might have been nothing at all. For this reason the judgment could not be upheld on any theory of the case without injustice to the appellant, and nothing could have been gained by treating plaintiff's allegation that he had repudiated the compromise as surplusage. The case here is essentially different. The answer of the appellants, the evidence taken at the trial, and the findings of the court show that when the respondents made an offer to rescind and an alternative offer to compromise, the defendants had already put it out of their power to reconvey the Minnesota lands. The only relief, therefore, which the respondents could obtain was such as might be based upon the theory of affirmance, and such only was the relief decreed. No injustice can then possibly result from treating as mere surplusage all such portions of the complaint and the prayer for relief as may have reference to a rescission.

Upon this view of the pleadings it is to be observed that the allegation of the plaintiffs, to the effect that they offered to reconvey the Riverside lands on condition of reconveyance of the Minnesota lands—the allegation upon which a large part of appellants' argument is based—is not out of place even in an action based upon affirmance, for the respondents are in a court of equity seeking equitable relief, and the allegation in question goes to show that they were willing, and offered, to do equity.

This is not a mere action for money damages—the only

relief which a court of law could afford. It is an action to obtain, amongst other things, a decree canceling the mortgage on the Riverside land, a species of relief which only a court of equity can afford, and therefore it is the very case described in the caption to the findings of the court,—viz., "A case for equitable relief against defendants for fraudulent exchange of lands." This caption of the findings of the court, together with the allegation of an offer to rescind and the prayer for rescission, furnishes the whole basis for the contention that the action is for a rescission pure and simple, and cannot possibly be regarded or treated as an action based upon an affirmance of the contract. To sustain this conclusion it is assumed, as the basis of the argument, that the only remedy open to one who elects to affirm a contract obtained by fraud is an action at law for money damages, and, therefore, that it follows necessarily, when he resorts to a court of equity for equitable relief, that he must be proceeding upon a disaffirmance of the contract. But this position is untenable. The jurisdiction of equity extends to all cases of fraud, except only that limited class of cases in which a judgment for damages affords adequate relief to the injured party, and fraudulent sales or exchanges of lands form no exception to this rule. It may and does often happen that a contract for the sale or exchange of lands cannot be rescinded without serious loss to the injured party even when it is not otherwise impossible, and at the same time it may be true that a simple judgment for money will not afford full relief. An instance of this is supplied by some of the cases cited by appellants. A vendor of lands has an equitable lien for the unpaid portion of the purchase price. If he has been induced by the fraud of the vendee to accept in part payment some worthless stock in a corporation, he may affirm the contract and sue in equity for a decree establishing his lien upon the land for the difference between the actual and the represented value of the stock. (*Mills* v. *Bliss*, 55 N. Y. 142; *Yeomans* v. *Bell*, 151 N. Y. 230.) And when the jurisdiction in equity attaches for any purpose it is retained for all purposes,—i. e. for the purpose, among others, of assessing and awarding damages, where damages are proper. For a full and able discussion of these propositions in a case very closely resembling this, see the

opinion of Chancellor Walworth in *Bradley* v. *Bosley*, 1 Barb. Ch. 147.

In this case a part of the price paid by the respondents for the Riverside land was a note secured by a mortgage of that very land. If this note was for less than the sum in which they were defrauded by defendants in the exchange, they were entitled to have it and the mortgage canceled, as well as damages sufficient to fully compensate the injury. And it was proper in order to avoid circuity of action to seek all the relief appropriate to the case in one action.

This statement of our views regarding the merely technical objections to the form of the action eliminates from the case most of the points which the appellants have urged in their argument.

We need not consider, for instance, the various grounds upon which it is contended that the respondents ratified or affirmed the contract after discovery, or opportunity to discover, the alleged frauds, for, as we have seen, the judgment is entirely compatible with and may be rested upon affirmance of the contract. Nor is the question of laches of any moment. The action was commenced within less than three years after commission of the fraud. There is nothing in the record which would warrant a reversal of the judgment, and the same is true of the order denying a new trial. The findings dispose of all the material issues, and although the evidence is sharply conflicting as to the alleged fraud, there can be no question that there is substantial evidence to sustain the findings upon that issue.

The judgment and order of the superior court are affirmed.

Van Dyke, J., McFarland, J., Shaw, J. Angellotti, J., and Henshaw, J., concurred.

A petition for a rehearing having been filed, the following opinion was rendered thereon on the 24th of May, 1904:—

BEATTY, C. J.—Counsel for appellants in his petition for rehearing complains that the court has failed to pass upon one of the vital questions in the case.

It is true that the point was made in appellants' brief that Montgomery had *condoned* the alleged fraud of McLaury by

seeking favors of him after discovery of the fraud, thus bringing the case within the principle of *Schmidt* v. *Mesmer*, 116 Cal. 267. The facts of this case, however, are so utterly dissimilar to the facts in *Schmidt* v. *Mesmer* that the decision in that case has no application.

The so-called favors solicited by Montgomery were these: He called upon McLaury to refund water assessments which had accrued prior to the exchange of properties, and which he had been compelled to pay. He accepted a new deed tendered by McLaury for the perfection of his water-right. He wrote to McLaury to say that he should require an additional five hundred dollars, which he claimed McLaury had offered to advance him on the security of his mortgage of the Riverside lands.

But, according to his testimony and the findings of the court, all this was prior to the discovery of the fraud that had been practiced upon him.

The court found that owing to sickness and absence Montgomery did not discover the falsity of McLaury's representations until shortly before the commencement of the action (January 11, 1900). This finding is sustained by the testimony of Montgomery that he first made the discovery when he commenced plowing the land the last of October, or beginning of November, 1899. His request for the loan was made October 15, 1899, and was refused. McLaury's answer to his request, which was by letter, gives an excuse for his refusal, which clearly shows that he had promised the loan. We quote as follows:—

"Dear Sir:—I have received your favor of October 15. In speaking of your needs when I was at Riverside you said your son had offered to let you have as much as $1,000 in case you needed it and that you would not need a loan of $500, concerning which we talked before you went away, therefore I had made no preparations to let you have any more money and as crops are here this year I scarcely see how I could spare it at all."

The whole basis of the point made by counsel, therefore, resolves itself into this: That before Montgomery discovered the fraud he solicited a loan that had been promised at the time of the exchange of lands,—and solicited it in vain,—and

that at an earlier date he had accepted a deed which McLaury tendered in fulfillment of his obligation to convey the water-right, and demanded and received repayment of an assessment which it was McLaury's duty to have paid.

A comparison of these facts with the facts of *Schmidt* v. *Mesmer,* 116 Cal. 267, will demonstrate the utter dissimilarity of the cases.

In his petition for a rehearing counsel cites the case of *Kingman Co.* v. *Stoddard,* 85 Fed. Rep. 740. That is a well-considered case, and shows even more clearly that *Schmidt* v. *Mesmer* how totally inapplicable to this case is the principle which it decides.

The principle decided is simply this: That if the vendee of property discovers that he has been defrauded before he has paid the purchase price, and with that knowledge accepts a conveyance, he cannot refuse to pay; and if he has paid cannot maintain an action for deceit.

It is contended, however, that because when Montgomery saw the land in March, 1899, he could see that in some respects it fell short of McLaury's description, and aroused his suspicions, he was then put upon notice of all that he could have discovered by a prompt investigation; and, consequently, that he is charged with knowledge as of that date of all that he subsequently discovered.

This would perhaps be true if the action was based upon rescission, but this doctrine of relation does not apply in an action for deceit, or a suit in equity based upon affirmance of the contract.

Rehearing denied.

Shaw, J., Angellotti, J., and Van Dyke, J., concurred.