## PHILLIPS et al. v. MITCHELL et al.

No. 4568—Opinion Filed Nov. 20, 1917.

Rehearing Denied April 23, 1918.

(172 Pac. 85.)

(Syllabus.)

1. **Parties—Misjoinder—Waiver.**

The objection that there is a misjoinder of parties must be raised in some proper manner before trial, or same will be waived.

2. **Abatement and Revival—Jurisdiction—Objections.**

A party who denies the jurisdiction of the court over his person must raise the point before he answers to the merits.

3. **Evidence—Testimony of Absent Witness—Discretion.**

It is within the sound discretion of the trial court to determine the degree of preliminary proof necessary to admit the testimony of an absent witness given at a former trial in the same case.

4. **Evidence—Admissibility — Statements by Associate.**

Plaintiff and another were endeavoring to make a joint sale of stock owned by them in a corporation. The other party in order to induce a purchaser of said stock made a written statement of the financial condition of the corporation. Held, in the absence of a showing that plaintiff authorized the statement or was in some way connected therewith, the same was inadmissible against him.

**5. Appeal and Error—Remarks of Court—Prejudice.**

Remarks of the court made during the trial examined, and held not prejudicial.

**6. Action—Consolidation—Powers of Court.**

Where parties consent to the consolidation of two separate actions and agree that same may be tried as one action, the power and jurisdiction of the court with respect thereto is the same as if it had originally been brought as one action containing all the issues embraced within the consolidated case.

**7. Courts—Equitable Jurisdiction of District Court—Fraud.**

The equitable jurisdiction of the district court extends to all actions of fraud, except only that limited class of cases in which a judgment for damages affords adequate relief and fraudulent sales or exchanges of land form no exception to the rule, and it is not an insuperable objection to such jurisdiction that an award of damages may be had, for unless such award affords full and adequate relief in order to avoid circuity of action equity may award all the relief appropriate to the case.

**8. Appeal and Error—Pleading Set-Off Below.**

Where defendant did not plead certain matters as a set-off against plaintiff's claim for damages and insisted in the trial court and in this court upon the original submission that said matters could not be set off against plaintiff's cause of action, said defendants cannot for the first time in this court upon a rehearing urge said matters as a set-off.

**9. Exchange of Property—Relief in Case of Fraud.**

Where plaintiff was induced by fraudulent misrepresentations as to the value of certain corporate stock to exchange therefor certain lands, and as a part of said agreement of exchange plaintiff obligated himself to pay off certain incumbrances against said land, and where to indemnify himself against said outstanding obligations defendant retained a large amount of the stock sold to plaintiff and also took from plaintiff and wife a mortgage upon certain other real estate, and where defendant failed to account for said stock, held that, in an action by plaintiff for damages and for equitable relief based upon said fraudulent transaction, defendant was properly charged with the stock retained by him, which at the time of the fraudulent transactions exceeded in value the amount of the outstanding incumbrances upon the lands sold to defendant, and that plaintiff was entitled as against defendant to be relieved of his agreement to discharge said incumbrances.

Sharp, C. J., and Thacker and Miley, JJ., dissenting in part.

Error from District Court, Logan County; A. H. Huston, Judge.

Suit by R. I. Phillips against W. O. Mitchell and wife for reformation of a deed, consolidated with a suit by defendants against D. M. Phillips, R. I. Phillips, and others for damages, and heard together by agreement. Judgment for W. O. Mitchell and wife, and D. M. Phillips and others bring error. Affirmed.

See, also, 52 Okla. 580, 152 Pac. 610.

Milton Brown, Giddings & Giddings, and Tom F. McMechan, for plaintiffs in error.

Horace Speed, for defendants in error.

HARDY, J. R. I. Phillips instituted suit in the superior court of Logan county, seeking reformation of a certain deed, executed to him by W. O. Mitchell and Helen E. Mitchell, his wife. Mitchell and wife answered by general denial, and filed a cross-petition, alleging fraud in the procurement of said deed, and prayed damages in the sum of $21,000 against D. M. Phillips, R. I. Phillips, H. E. Diehl, and Otto Meek. Upon motion of plaintiffs this cross-petition was stricken, after which plaintiff therein filed an action in the superior court of Logan county against all of said defendants, setting forth the facts alleged in said cross-petition, and service of summons was had upon R. I. Phillips in Logan county, and upon the other defendants in Oklahoma county. Defendants answered this action by a general denial. Both of said suits were thereafter transferred to the district court of Logan county, and by agreement of the parties consolidated.

This controversy grows out of a transaction between D. M. Phillips and W. O. Mitchell. Phillips, his wife, and son, originally owned all of the stock of the O. K. Bus & Carriage Company, which was incorporated for $1,000. In 1909, the capital stock was increased to $60,000, and 594 shares of stock of the new corporation were in the name of D. M. Phillips; his wife held 3 shares, and his son, R. I. Phillips, 3 shares. The par value of the stock was $100 per share. Various shares of such stock passed into the hands of other parties, some of which were obtained by trade or purchase, and some were transferred to certain persons without consideration to be held in trust for D. M. Phillips. In the fall of 1909, D. M. Phillips traded plaintiff W. O. Mitchell 200 shares of said stock for a farm in Logan county, and later traded him 110 shares for other farm lands in Logan county and Oklahoma City property, comprising the residence of Mitchell and wife. As a part consideration for said last-mentioned stock, Mitchell and wife executed to Phillips a note for $1,000 and a mortgage for $3.500 upon certain lands in

Oklahoma City, which mortgage secured said $1,000 note, and the sum of $2,500 being the amount of a mortgage against the land conveyed in the second transaction which Mitchell agreed to discharge. The land conveyed in the first transaction was mortgaged in the sum of $7,100, which plaintiff W. O. Mitchell agreed to pay and defendant D. M. Phillips retained as an indemnity 170 shares of stock in the corporation which was to secure the payment of the entire $1,600. Helen E. Mitchell, the wife of W. O. Mitchell, joined in the conveyance of the real estate and the execution of said mortgage. One of the farms located in Logan county was at the request of defendant D. M. Phillips, conveyed to his son, R. I. Phillips, and the land so conveyed was, by mistake, misdescribed in the deed. W. O. Mitchell assumed the management of the corporation in January, 1910. It having been learned that the property conveyed to R. I. Phillips had been misdescribed, request was made of W. O. Mitchell that he make a new deed with a correct description of the property which he refused to do, giving as a reason therefor that he had been defrauded in the trade with D. M. Phillips. Shortly thereafter the action of R. I. Phillips for reformation of the deed was commenced. At the trial of the consolidated case, the court submitted certain issues to the jury which returned a verdict against D. M. Phillips. H. E. Diehl, and Otto Meek in the sum of $12,000, and in favor of R. I. Phillips. Judgment was rendered correcting the deed as prayed by R. I. Phillips and in favor of plaintiffs in accordance with the verdict of the jury, and it was further decreed that plaintiff W. O. Mitchell be not required to pay to defendant D. M. Phillips nor in his behalf to protect him in his title to the lands conveyed in so far as plaintiff had obligated himself to discharge the incumbrances thereon, and that plaintiff's agreement to pay same should not operate as a set-off against the judgment rendered, and canceling plaintiff's agreement with said defendant to pay said obligations, and also canceling the mortgage for $3,500 given by Mitchell and wife on the Oklahoma City property. The court further found that D. M. Phillips had advanced W. O. Mitchell $1,000 in cash for which he was entitled to credit, and reduced the amount of the money judgment to $11,000, which was entered against defendants D. M. Phillips, H. E. Diehl, and Otto Meek. Motion for new trial having been overruled, said defendants prosecute error.

Defendants first urge that Helen E. Mitchell, wife of W. O. Mitchell, was not a proper party to the suit. She joined in the original petition by her husband to which defendants replied by general denial, and the objection here urged was not raised until after the jury had returned their verdict, and motion for new trial had been overruled. This objection comes too late, because it was not raised by timely motion or in any other way before the trial.

Helen E. Mitchell was the owner of the property described in the mortgage for $3,500, and had a substantial interest in the subject-matter of this litigation. W. O. Mitchell's cause of action was that he had been defrauded of the lands given by him in exchange for the stock of the corporation, and the wife's cause of action was that by reason of the fraud practiced upon her husband she had been induced to execute the mortgage upon her separate property to secure the obligations of her husband. These causes of action are not identical, yet they grow out of the same transaction, and both plaintiffs were defrauded by the same means, and their respective rights were affected by the same acts. One recovery will adjust the rights of both, and one judgment will be a bar to another action by either of the plaintiffs, and hence there is a common interest in the subject-matter of the litigation such as will authorize them to join in one suit, although the injury which is sustained by each may be separate and distinct. Section 4690 of the Revised Laws 1910 enacts that all persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs except as otherwise provided, and section 4738 permits the plaintiffs to unite several causes of action in the same petition where they all arise out of the same transaction or transactions connected with the subject of the action, and affect all the parties to the action except in actions to enforce mortgages or other liens. Simar v. Canaday, 53 N. Y. 298, 13 Am. Rep. 526; Montgomery v. McLaury, 143 Cal. 83, 76 Pac. 964.

The next question urged is that all of the defendants except R. I. Phillips were served with summons outside of Logan county, and, as the verdict of the jury was in favor of R. I. Phillips, that the district court of Logan county was without jurisdiction to render judgment against the other defendants. This objection, if it possessed any merit, goes to the jurisdiction of the person of defendants only, which can be waived and was waived because all of said defendants, without objecting to the jurisdiction of the court over their person, appeared, answered, and went to trial, and the point

was not urged until after the verdict was returned, when it was too late. Fitzgerald v. Foster, 11 Okla. 558, 69 Pac. 878; Whitaker v. Hughes, 14 Okla. 510, 78 Pac. 383; Appeal of Floyd, 31 Okla. 549, 122 Pac. 516.

At the trial, plaintiff offered the testimony given by two witnesses in a former trial, claiming that said witnesses were beyond the limits of Logan county; one residing in Oklahoma county and another in Dallas, Tex. As a predicate for the admission of this testimony, plaintiff W. O. Mitchell testified that witness Otti lived in Oklahoma City at the time of the first trial, and resided in Dallas. Tex., at the time the testimony was offered; that he had a letter from said witness, mailed at Dallas about two weeks before the trial; that he made no inquiry in Oklahoma City for said witness because he knew witness had left, and had not inquired for him in Logan county. As to the other witness, Feltz, he testified that said witness lived in Oklahoma City, and was not in Logan county. The sufficiency of the showing to authorize the introduction of this testimony was a matter within the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless it be made to appear that such discretion was abused. The preliminary proof in this case was sufficient to justify the court in admitting such testimony. Warren v. State, 6 Okla. Cr. 1, 115 Pac. 812, 34 L. R. A. (N. S.) 1121; Edwards v. State, 9 Okla. Cr. 306, 131 Pac. 956, 44 L. R. A. (N. S.) 701; 2 Wigmore, Ev. par. 1405.

Defendants offered in evidence a statement made by one Braden as to the assets and financial condition of the corporation which was rejected, and error is assigned upon the action of the court in so doing. It appears that, after Mitchell had purchased stock in the corporation, Braden acquired possession of 150 shares of the stock, and had been elected secretary and treasurer. Braden and Mitchell were endeavoring to dispose of their stock, and Braden made said statement to a probate purchaser, which statement presented the financial status of the corporation in rather an optimistic and over-drawn way. Defendants made an effort to connect Mitchell with this statement, and failed, and, while Braden stated that he and Mitchell were trying to sell their stock together, he testified that the statement had been made on his own responsibility, and that Mitchell had not directed him to prepare the same and was not in any way connected with it. The facts show that Mitchell had nothing to do with the statement in any way. He did not author-

ize nor adopt it, and there was no such association between him and Braden as to warrant the conclusion that Braden was acting as his agent in the preparation of such statement, and its exclusion by the court was entirely proper.

Complaint is made of the conduct of the trial court during the progress of the trial. The alleged misconduct consisted of certain remarks indulged in by the court during a colloquy with defendant's counsel and in certain oral remarks while reading his instructions to the jury. It does not appear that anything said by the court influenced the verdict of the jury, or that any prejudice therefrom resulted to the defendant, and therefore this contention is without merit. And this is true, also, because the court adopted and approved the verdict and himself made findings of fact in accordance therewith.

The defendants insist that, while the action of R. I. Phillips seeking reformation of his deed was an equitable one, the action of plaintiff against the defendants for damages was an action at law, and while the two actions were consolidated and tried together for convenience, they still remained separate, and the first should have been tried as an equitable action and the latter as an action at law. When the parties consented to a consolidation of the two actions, they in fact agreed that the separate actions should be discontinued, and a new and distinct one created from the two so consolidated in which should be included and litigated all of the questions presented by the pleadings in the two former actions. The power and jurisdiction of the court with reference to this new action was the same as if it had been originally brought in the manner in which actions were originally instituted. 4 Enc. P. & P. 701.

The distinction between actions at law and suits in equity and the forms of all such actions and suits have been abolished by the Code, and in their places there is but one form of action, which is called a "civil action," and the rules of pleading which formerly prevailed in civil actions have been abolished, and the forms of pleading in courts of record and the rules by which their sufficiency must be determined are those prescribed by the Code. The object of the Legislature in adopting the Code was, not only to abolish the distinctions which formerly existed between actions at law and suits in equity, but also to relieve litigants of the intricate and technical distinctions in common-law rules of pleading, and to provide a plainer, simpler, more speedy, and

less cumbersome system of procedure by which their rights might be determined. St. L. & S. F. Ry. Co. v. Yount, 30 Okla. 371, 120 Pac. 627.

We have no courts exercising equity jurisdiction separate and apart from jurisdiction in matters which were formerly denominated legal, but the district courts possess jurisdiction to administer in a proper case both kinds of relief, and the rights of the litigants are to be determined from the facts alleged and established at the trial. It seems clear from the whole frame of the petition, and from the relief demanded, that it was the intention of the pleader to set forth all the facts surrounding the transaction and to pray any and every kind of relief to which upon the facts found he might be entitled. This is ordinarily the correct method of pleading under the Code. Hawkins v. Overstreet, 7 Okla. 277, 54 Pac. 472; St. L. & S. F. Ry. Co. v. Yount, supra.

Notwithstanding this great liberality, it sometimes becomes necessary for a party seeking redress to choose between two inconsistent positions, and such defendants contend is the situation here. The doctrine is well settled that one who has been induced by fraud and deceit to part with title to real property, and is seeking relief, has a choice of remedies. He may affirm the contract and sue for damages or he may rescind; but he cannot do both. Wesley et al. v. Diamond et al., 26 Okla. 170, 109 Pac. 524. Urging this rule of law, defendants contend that plaintiff's cause of action is based upon an affirmance of the contract, and that an award of damages would afford full and complete relief, and that the allegations of the petition are such as to preclude him from equitable relief. When equity has obtained jurisdiction of the controversy on any ground or for any purpose, it will retain such jurisdiction for the purpose of administering complete relief, and doing entire justice with respect to the subject-matter, and to avoid multiplicity of suits. Cook v. Warner, 41 Okla. 781, 140 Pac. 424; Murray et al. v. Speed et al., 54 Okla. 31, 153 Pac. 181; Galbreath Gas Co. v. Lindsey, 62 Okla. 84, 161 Pac. 826.

The jurisdiction of equity extends to all actions of fraud except only that limited class of cases in which a judgment for damages affords adequate relief to the injured party, and fraudulent sales or exchanges of land furnish no exception to the rule, and it is not an insuperable objection to such jurisdiction that an award of damages may be had for unless such award affords full and complete relief in order to avoid circu-

ity of action equity may award all the relief appropriate to the case. Montgomery v. McLaury, 143 Cal. 83, 76 Pac. 964; Bradley v. Bosley, 1 Bard. Ch. (N. Y.) 125.

This court has held in a long line of cases that, where personal injuries have been suffered for which a liability exists and a release thereof has been fraudulently obtained for a grossly inadequate sum, an action for damages may be maintained without first obtaining a decree to rescind or cancel said release, and that plaintiff may attack such release for fraud in its procurement when it is set up as a defense without returning or tendering back the consideration received by him at the time the release was obtained. St. L. & S. F. v. Richards, 28 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032; St. L. & S. F. Ry. Co. v. Nichols, 39 Okla. 522, 136 Pac. 159; Herndon v. St. L. & S. F. Ry. Co., 37 Okla. 256, 128 Pac. 727; St. L. & S. F. Ry. Co. v. Reed, 37 Okla. 350, 132 Pac. 355; St. L. & S. F. Ry. Co. v. Chester, 41 Okla. 369, 138 Pac. 156.

In Montgomery v. McLaury, 143 Cal. 83, 76 Pac. 964, which was an action for fraud in an exchange of certain lands, plaintiff was awarded a verdict for damages, and in addition thereto obtained cancellation of a mortgage given to secure a portion of the consideration for the exchange, and it was held that the judgment was proper. Another case supporting this view is Bradley v. Bosley, 1 Barb. Ch. 125. In that case, Chancellor Walworth, after statement of the facts, held that plaintiff was only entitled to be compensated for the difference between the value of the land received by him in exchange and that which he had conveyed with interest on such difference, and held that equity had jurisdiction to give the complainant relief upon the facts of the case. In the opinion it was said:

"Indeed, it may be considered as a settled principle of this court, in all cases of fraud, that if the party who has been defrauded is entitled to come here for any relief arising out of the contract in which he has been defrauded, and where it is necessary for him to allege and establish the fraud in order to obtain such relief he may obtain full relief here, without resorting to a suit at law, although as to the part of the relief claimed he had a perfect remedy in an action at law for damages."

The petition in this case, in connection with the facts found by the court, was sufficient to authorize the court to take jurisdiction of the entire case and determine all the matters in controversy. The evidence sustains the verdict of the jury and the judgment of the court pronounced thereon.

It is shown that Phillips was the owner of the O. K. Bus, Baggage & Carriage Company, a corporation, capitalized at $1,000; that in the summer of 1909 the capital stock was increased to $60,000, which was distributed among Phillips, Meek, Diehl and others, some claiming to have traded for it and others to be holding in trust for Phillips. Phillips owned the barn in Oklahoma City where the business was being carried on. It was represented to Mitchell that the business was a very profitable one, paying Phillips a rental of $400 per month, making a large profit besides, and that it was the best paying concern in the city, and statements were exhibited to Mitchell, showing large profits. Phillips testified that when he traded some of the stock to Diehl he agreed not to charge any rent for the use of the barns by the corporation for a period of three months, and that he neglected for the three months after the expiration of this period to charge any rent until after the trade with Mitchell, by reason of which no rents appeared in the expense account submitted to Mitchell. After the trade, Phillips removed all the fine, big teams and all the most valuable horses as his individual property. The trial court found that Mitchell had been led to believe that all of the property removed by Phillips was among the assets of the corporation. Mitchell was also induced to believe that Phillips who was experienced in the management of the business only desired to dispose of a part of the stock, and would remain in the active management of the business, and, as a safeguard against being left a minority stockholder it was agreed that Mitchell should have the refusal of enough of the stock to give him a majority in case Phillips should later desire to sell. Within a week or two after the first contract was executed, instead of remaining in charge of the business, as he had promised, Phillips declared an intention of selling, and Mitchell to protect himself purchased the second block of stock. Phillips retained $17,000 worth of Mitchell's stock as indemnity, and after he had removed the property mentioned, and retired from the active management thereof, the business proved a failure, and Phillips purchased all the assets of the business at the receiver's sale at a comparatively small sum, and has at no time in his pleadings or otherwise offered to account for other stock retained by him.

That portion of the decree which held that plaintiff W. O. Mitchell should not be held or required to pay defendant D. M. Phillips, nor for or in his behalf discharge, the incumbrances against the land conveyed to Phillips, was right. Having retained $17,000 of that corporate stock as indemnity against said incumbrances for which he had failed to account, it would have been inequitable for him to keep this stock, and at the same time compel plaintiff to discharge the obligations for which it was retained as indemnity. The amount of the incumbrances which plaintiff agreed to pay amounted to $9,600, and, had this stock possessed the value which Phillips represented it to have, it would have exceeded the amount of such obligations leaving a large balance due plaintiff. But giving it the value placed thereon by the jury, it was still in excess of the total amount of said incumbrances. Had the property retained by Phillips consisted of live stock or merchandise, or any other kind of tangible property, no one would hesitate to say that he should be held to account for it. The principle applicable to the present case is no different, and, keeping in mind the fact that Mitchell only received $14,000 of the $31,000 of stock purchased by him, it was proper for the court, in addition to the damages awarded by the verdict of the jury, which merely represented the difference between the actual value of the stock purchased by Mitchell and that value which Phillips represented it to possess, to charge Phillips with that portion of the stock retained by him; and, the value of such stock at the time of trade being largely in excess of the obligations which Mitchell had undertaken to discharge, there was no error in that portion of the decree which declared that said obligations should not operate as a set-off against the verdict for damages. If such were permitted, the judgment would not award Mitchell all the relief to which he was entitled, nor would any judgment award him the full measure of his relief until an accounting was had for the stock retained by Phillips, and that was what the court did, when he charged Phillips with this stock, and relieved Mitchell of his obligation to pay such incumbrances in so far as defendant was concerned. Defendants did not plead the agreement of Mitchell to discharge said incumbrances as a set-off in the trial court, and upon the original hearing in this court insisted that said matters could not be permitted as a set-off against plaintiff's claim for damages (Brief of Plaintiff in Error, p. 76), and said matters cannot be urged as proper subject for set-off for the first time on appeal, and certainly not upon a rehearing. Section 4745, Rev. Laws 1910; 3 Corp. Jur. 712.

This leaves for consideration that portion of the decree canceling the mortgage for $3,500 given by the Mitchells to R. M. Phillips.

This mortgage was given to secure the payment by Mitchell of a part of the incumbrances upon the land traded to Phillips, and we have just held that the court committed no error in canceling Mitchell's agreement in so far as defendant is concerned to discharge said incumbrances, and, under this view of the case. the mortgage should be canceled irrespective of the fact that the property embraced therein was the separate property of Helen E. Mitchell.

The judgment is affirmed. All the Justices concur, except SHARP, C. J., and THACKER and MILEY, JJ., who dissent from that portion of the opinion which affirms the judgment of the trial court canceling Mitchell's obligations to discharge outstanding incumbrances against the land traded to Phillips.

THACKER, J. (dissenting in part). I dissent with all possible emphasis from that portion of the decision and opinion of the court which affirms the decree of the trial court in the name of equity relieving W. O. Mitchell of his contractual obligation to D. M. Phillips to discharge certain mortgage liens to the amount of $9,600, upon the lands traded to Phillips and to pay direct to the latter the additional sum of $1,000, making in all $10,600, as, in my opinion, there is not only no equitable ground but not so much as a trace of equitable atmosphere to support this part of the decree affirmed, and such affirmance strikes down an adjudicated contractual right after it has become absolute.

In my opinion, the verdict and judgment recovered by W. O. and Helen E. Mitchell in this case for $12,000 as a difference between the actual and the falsely represented value of the 310 shares of the stock acquired by W. O. Mitchell in the Oklahoma Bus & Baggage Company in exchange for the aforesaid lands was full measure of their damages recoverable in this case, and such damages were recovered upon the theory that the Mitchells affirmed in its entirety the trade contract under the terms of which W. O. Mitchell obligated himself to pay said $10,-600 and gave D. M. Phillips the right to continue to hold 170 of the said 310 shares of stock as "indemnity" against the failure of W. O. Mitchell to perform his obligations in this regard.

In my opinion, the verdict and judgment for $12,000 not only gave the Mitchells the full measure of compensation recoverable by them in this case but fixed as firmly and as absolutely as any adjudication could fix W. O. Mitchell's legal obligation to D. M. Phillips to pay said $10,600, and as firmly and as

absolutely as any adjudication could fix the latter's legal right to retain said 170 shares of stock as "indemnity" against the former's failure to perform his obligation by the payment of the same.

In my opinion, when the trial court approved this verdict and gave this judgment for $12,000, the Mitchells were entitled to no further relief under any known principle of law or of equity, or of common justice, unless, as decided in the cases of Bradley v. Bosley 1 Barb. Ch. (N. Y.) 125, and Montgomery v. McLaury. 143 Cal. 83, 76 Pac. 964, the Mitchells were, or would have been if they had demanded it, entitled in equity to an enforcement of an equitable lien upon the lands traded Phillips as a means of satisfying their judgment for the $12,000, or, if they preferred, to an equitable offset of $10,-600 of said $12,000 against Mitchell's obligation to pay said $10,600, and to an enforcement of an equitable lien upon the lands traded Phillips for $1,400 as the balance of said judgment for $12,000.

This judgment for $12,000 left no issue of fact, or of law, or of equity to be determined between the Mitchells and D. M. Phillips; it left nothing but the duty of performance of the contract affirmed, which included a reformation of the deed to R. I. Phillips and a payment of said $10,600 by W. O. Mitchell. It appears from a statement of the trial judge in making the said decree, if not from one or more of the briefs of the parties, although not from any evidence in the case, that at the time of that decree, which was more than a month after the court had rendered judgment upon the verdict for $12,000, the 170 shares of stock held by Phillips as "indemnity" had been sold at a trustee's sale; but it does not appear whether as the property of Mitchell or the property of Phillips, or whether the trustee's sale was for the benefit of Mitchell or Phillips or both of them, or for what cause or causes it was made; and that sale is irrelevant and wholly foreign to any question involved in this case.

After the verdict and judgment for $12,000, the contractual situation of the parties was simply this: D. M. Phillips was entiled to a decree reforming the deed to R. I. Phillips as a matter of course and to hold said 170 shares of stock as "indemnity" until W. O. Mitchell performed his obligation to pay said $10,600.

The cases of Bradley v. Bosly, supra, and Montgomery v. McLaury, supra, to which reference is above made, are cases of affirmance of the contracts, and are the authorities and

the only authorities upon which the court bases the proposition from which I dissent; but those cases are quicksands to the tread of that proposition when properly analyzed and understood. The Bradley Case merely holds that, when one elects to affirm his contract, notwithstanding a fraud upon him in respect to the value of the property he acquired, he may sue in a court of equity to establish an equitable lien upon the property he traded for the same to the extent of the difference between the actual and the falsely represented value of the property he acquired, and that such court of equity, having acquired jurisdiction for the purpose of enforcing such lien, may also determine the difference between the actual and the falsely represented value of the property he acquired as the measure of his damages. The Montgomery Case merely holds that, upon the principle announced in the Bradley Case, the plaintiff may invoke the jurisdiction of equity to subject his own obligations to pay money, by canceling the same, to the satisfaction of his damages measured by the difference between the actual and the falsely represented value of the property he acquired, and that a court of equity, having acquired jurisdiction for this purpose, may determine the amount of such damages and give personal judgment for that amount by which it exceeds the plaintiff's indebtedness that is canceled. There is some loose and inaccurate language used in this Montgomery Case; but an examination of the case will show that it holds nothing more nor less than I have stated. Both the Bradley and the Montgomery Cases incidentally announce the rule for which I contend in the instant case in terms entirely satisfactory to me. For instance, in the third and fourth paragraphs of the syllabus in the Bradley Case, it is said·

"Where a party has been defrauded by another, in the purchase or sale of property, he may rescind the contract, so as to restore the parties to the same situation they were in when the contract was made; or he may affirm the contract, so far as it has been executed, and claim a compensation for the fraud.

"But it must be a very special case which will authorize the injured party to come into a court of equity to have a contract partially rescinded; and it must be one in which the court can see that no possible injustice will be done by such a course."

And in the second and third paragraphs of the syllabus in the Montgomery Case it is said:

"An election to disaffirm a contract induced by fraud, and an effort to obtain a rescission, will not, if resisted, and especially if rendered impossible or of doubtful advantage by the act of the guilty party, bar an action on a subsequent affirmance.

"Where a party has been induced to enter into a contract by fraud, the commencement by him of an action against the other party based on the theory of an affirmance constitutes in itself an affirmance of the contract."

However, it is immaterial what courts of other jurisdictions have held in this regard, as our own court has repeatedly (as for instance in the case of Wesley v. Diamond, 26 Okla. 170, 109 Pac. 524) announced in unequivocal language the familiar rule that a party who has been defrauded in such cases as this may affirm the contract and sue for damages or, if he prefers, may rescind the contract and recover back what he gave the adverse party; but he cannot do both. It is true that under exceptional circumstances a party may affirm in part and rescind in part a contract of this character; but no such question is here involved as the contract in the instant case is affirmed in whole by a recovery of the full amount of the difference between the actual and the falsely represented value of the property traded.

The Mitchells received in the verdict and judgment for $12,000 full compensation for the fraud practiced upon them without regard to the value of the property traded D. M. Phillips, so that no issue justiciable thereafter existed or could thereafter arise in this case without repudiating that verdict and judgment. This verdict and judgment for this amount placed the Mitchells in the same position, in the eyes of the law, as they would have been in if the 310 shares of stock had been worth precisely what it was represented to them to be worth. It left nothing to be done except a performance of the contract according to its terms; but the decree from which I dissent relieves W. O. Mitchell from his legal obligation to perform.

In their petition the Mitchells alleged the difference between the actual value and the represented value of these 310 shares of stock to be $21,000; but, after the jury and the judge had solemnly determined that this difference was only $12,000 by giving the verdict and judgment for that amount upon the theory that the parties were bound to perform this contract, the judge by the decree from which I dissent strikes down a part of the contract and gives W. O. Mitchell an additional $10,600, which makes a total recovery of 22,600, or $1,600 more than the Mitchells claimed in their petition to be the

difference between the actual and the falsely represented value of the 310 shares of stock in question.

It is true that the Mitchells' petition apparently attempts the impossible feat of combining an action for the full amount of damages sustained by them, as if they desired to affirm and stand upon the entire contract with a suit in equity for a rescission of that part of the contract which obligated W. O. Mitchell to pay said $10,600, without any reduction from their damages on account of such rescission; but, until after the verdict for $12,000 and the judgment of the trial court approving the same, the parties and that court treated this as an ordinary action at law for compensatory damages based upon an affirmance of the entire contract. This is shown by the instructions of the court, without objection by either party, to the effect that the measure of the Mitchells' damages was the difference between the actual and the falsely represented value of the said 310 shares of stock, and by the verdict of the jury, in accord with this instruction, for $12,000 as representing such difference in value.

It is also shown by what was said upon the examination of W. O. Mitchell as a witness in behalf of the plaintiffs during which examination he and his counsel, and the trial judge, referring to his obligation under the contract to pay said $10,600, indicated that they understood that, whether the Mitchells lost or won their action at law for damages, W. O. Mitchell would be bound to pay said $10,600. Counsel for the Mitchells questioned W. O. Mitchell as follows: "And no matter what this law suit results in, you are to pay those off as between you and him" (evidently referring to the mortgages for $10,600 as "those" and to D. M. Phillips as "him")— to which question adverse counsel objected, whereupon the judge stated, "What the contract is you have that in writing," to which Mitchell's counsel responded by the following question: "There is no other contract?" and W. O. Mitchell answered: "No, sir; no other contract."

The foregoing statement of my dissent from that portion of the opinion of the court which I have discussed is made with all possible deference to and respect for the adverse view of the majority of my Associates.

I think the decree from which I dissent should be reversed, and that the judgment for $12,000 less the offset of $1,000 allowed without objection should be affirmed; and I concur in the opinion of the court except in the respect shown by the above dissent.

SHARP, C. J., concurs in the dissent.