## OWENS et al. v. PURDY et al.

No. 14158—Opinion Filed July 17, 1923.

(Syllabus.)

**1. Action—Kinds of Action—Pleading—Petition—Statutes.**

Section 174, Comp. Stat. 1921, provides: "Actions are of two kinds: first, civil; second, criminal."

Section 175, Id., defines a criminal action.

Section 176, Id., says: "Every other is a civil action."

Section 178, Id., says: "The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

Section 231, Id., provides: "A civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition, and causing a summons to be issued thereon."

Section 263, Id., provides: "The rules of pleading heretofore existing in civil actions are abolished; and hereafter, the forms of pleadings in civil actions in courts of record, and the rules by which their sufficiency may be determined, are those prescribed by this Code."

Section 264, Id., provides: "The only pleadings allowed are: First. The petition by the plaintiff. Second. The answer or demurrer by the defendant. Third. The demurrer or reply by the plaintiff. Fourth. The demurrer by the defendant to the reply of the plaintiff."

Section 265, Id., provides: "The petition must contain: First. The name of the court, and the county in which the action is brought, and the names of the parties, plaintiff and defendant, followed by the word 'petition.' Second. A statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition. Third. A demand of the relief to which the party supposes himself entitled.* * * "

**2. Pleading—Prayer—Effect on Relief.**

The prayer does not of itself determine the relief to which a party is entitled, nor the measure of relief to be applied.

**3. Same—Compliance with Statutes.**

A substantial compliance with our Code provisions relating to civil actions is mandatory.

**4. Same—Petition—Relief — Question for Court.**

Where the facts stated in a petition show that plaintiff has sustained a detriment without fault on his part; that such detriment has been caused by the wrongful conduct of another; states facts which show the liability of the party guilty of such wrongful conduct, it then becomes the duty of the court to determine from the allegations and proof the relief in law or equity to which the plaintiff may be entitled.

**5. Same—Equity — Specific Performance—Sufficiency of Petition.**

(a) District courts of this state are endowed with the dual power of a chancellor and court at law, so that under the facts stated and proved in a civil action, if the law be adequate, the court will award such relief as the law authorizes, but if the law be inadequate to proper relief, then the court under its powers as a chancellor will award such relief as in equity and good conscience the allegations and proof show the plaintiff entitled to receive.

Where a prayer is for a specific performance and the facts stated in the petition are not sufficiently definite to enable the court to determine what specific things are required to be done, it is not error to refuse to make an order for specific performance.

(b) But where the prayer is for general relief also, a court will then grant such relief as under the facts the plaintiff is entitled to receive.

**6. Same.**

Where the prayer is for specific performance and also for general relief, it is error to sustain a general demurrer if the facts stated in the petition show plaintiff entitled to any relief.

Error from Superior Court, Creek County; Gaylord R. Wilcox, Judge.

Action by O. O. Owens and another against A. H. Purdy and others for specific performance of contract and general relief. Demurrer to petition sustained, and plaintiff brings error. Reversed, and remanded, with directions.

Moss & Owen, Jas. A. Veasey, C. M. Oakes, and Walter Davison, for plaintiffs in error.

Cheatham & Beaver, for defendants in error Purdy & Combs.

Thrift & Davenport, for defendants in error.

HARRISON, J. This is a suit to compel specific performance of a written contract to convey the oil, gas, and other mineral interests in certain tracts of land, and for general relief. The trial court sustained a demurrer to the amended petition, and the cause is here on the question whether a cause of action is therein stated. The material facts alleged are:

On November 6, 1920, it having been represented by defendant Purdy that he had and would convey to plaintiff Owens a valid, merchantable title to the oil, gas, and other mineral interests in and to certain tracts of land, said plaintiff and defendant entered into a written contract, to wit:

"The undersigned, A. H. Purdy, has this day sold to O. O. Owens for a consideration of $20,000, $5,000 of which is in hand paid, and the balance to be paid upon approval of title by O. O. Owens, an undivided one-half interest in and to all the oil and gas and other mineral rights, subject to valid oil and gas leases now in said county, Oklahoma, to wit: The W. 1-2 of the S. E. 1-4 and the N. E. 1-4 of the S. W. 1-4 of section 3; and the E. 1-2 of the N. E. 1-4 and the W. 1-2 of the N. E. 1-4 and the N. W. 1-4 and the S. E. 1-4 of section 10, all in township 15 north, range 8 east; said conveyance to be made upon royalty deed or form to be furnished by O. O. Owens, said grant being perpetually and the said O. O. Owens is from this date to become possessed of all and singular the rights and privileges and emoluments which would otherwise accrue to the said A. H. Purdy, provided the said O. O. Owens makes final payment for said conveyance upon delivery of good and merchantable titles. It is understood that this agreement covers an undivided interest in the entire oil and other mineral rights, the same being all the interest therein of the undersigned.

"A. H. Purdy,
"O. O. Owen."

It is further alleged that plaintiff paid $5,000 in cash at the time the above contract was made, leaving a balance of $15,000 due and to be paid upon Owens' approval of the title. That Purdy executed conveyances to said property as provided in the written contract, but Owens disapproved the title to one of the tracts because it was fo-nd that Purdy had no title thereto. Another tract was disapproved because of certain irregularities in probate proceedings, which were deemed to be of such character as to render the title defective. That Owens promptly reported the discovery of these defects to Purdy and that Purdy acknowledged the effect of same.

That thereupon, on January 22, 1921, Purdy and Owens met for the purpose of adjusting the written contract to the defects discovered as aforesaid, at which time it was agreed between them that the tract to which Purdy had no title should be eliminated, and that therefore the balance of $15,000 due, under the written contract, should be reduced in the sum of $1.250, leaving a balance of $13.750 due: that it was agreed that upon the immediate institution of suits by Purdy

to cure the irregularities in the probate proceedings and to clear and perfect the title to the tract affected thereby, Owens would meet the $13,750 balance due, and both agreed that the said written contract be so modified that Owens should meet the $13,750 by executing three promissory notes, one for $4,000 dated January 22, 1921, due in 30 days, payable to the First State Bank of Bristow for the benefit of Purdy, another note for $4,000 due in 60 days, payable as aforesaid, and the third note for $5,750, payable to the order of Purdy, due in 60 days; that to secure the payment of said notes, it was agreed that Owens should deposit as collateral security three certain promissory notes of the Riverside Oil & Refining Company. That pursuant to said oral agreement, Owens executed the three notes and deposited same in the bank with the said three Riverside Oil & Refining Company notes as collateral; that thereupon and pursuant to the terms of the written contract, as thus modified by oral agreement, the parties agreed upon a form of deed which Purdy should execute, and that Purdy signed and acknowledged the deed agreed upon, but retained possession of same, agreeing to deliver it; that payment of such notes was conditioned upon Purdy's filing suits to cure the irregularities in said probate proceedings and to quiet title. A copy of said deed is attached to the petition.

It is further alleged that Purdy failed and refused to institute the suits which he promised to bring. That upon refusal by Purdy to institute said suits before the first note became due, Owens at his own expense brought suit and cleared the title to one tract; that Owens made frequent demands of Purdy to bring the suits he had promised to bring; that Purdy refused to bring said suits but on or about March 12, 1921, agreed that one suit should be filed; that through the efforts of Owens said suit, known as the Taborn case, was filed, but that Purdy failed to fulfill his oral agreement to obtain the appointment of a guardian ad litem in said suit (minor's interests being involved); that Purdy's procuring the appointment of a guardian ad litem in said cases was a condition upon which Owens was to pay said three promissory notes: that notwithstanding Purdy's failure to fulfill his agreements, on June 9, 1921, he tendered to Owens the deed which, as aforesaid, had been executed by Purdy, but retained by him, which deed thus tendered purported to convey the land described and agreed to be conveyed in the written contract with the tract eliminated, which under the oral agreement they had agreed to leave out; and that ac-

companing such tender of deed, Purdy demanded payment of the three notes; that at the time of such tender of deed by Purdy, he did not have a good merchantable title to the land described in such deed because, of the aforesaid defects in the probate proceedings, the irregularities in which proceedings Purdy had refused to cure by suit. That on June 13, 1921, Owens declined to accept the deed thus tendered and declined to pay said notes, because Purdy had violated the said oral agreement made January 22nd, and on the same date Owens offered to rescind the contracts entered into on the ground that Purdy had failed to comply with said written contract as modified by said oral contract; that said offer by Owens to rescind said contract was conditioned upon Purdy's repaying to Owens the $5,000 which Owens had already paid upon the contract, and returning to Owens the three notes which Owens had executed under the verbal contract, together with the three Riverside Oil & Refining Company notes put up as collateral; but Purdy refused to rescind, and still refuses to rescind, and still retains possession of the deed, the three notes executed under the alleged oral agreement, and the three collateral notes of the Riverside Oil & Refining Company, and also the $5,000 paid under the written contract.

That in December, 1921, Owens withdrew the offer to rescind and demanded that Purdy fulfill his obligation under the written contract as modified by the oral agreement of January 22nd.

It is further shown in the petition why the plaintiff in error Carter Oil Company was made a party to the suit, the alleged reason being that for a valuable consideration Owens had assigned in writing his rights under the written contract with Purdy to the Carter Oil Company, is so far as his rights under said written contract covered an undivided one-half interest in the oil, gas, and other mineral rights to one of the tracts (describing it) which Purdy had contracted to convey to Owens; that at the time of the filing of the suit the Carter Oil Company was the owner of all the interests in such tract that Owens had in same under his written contract with Purdy. Copy of said assignment to the Carter Oil Company is attached to the petition and made a part thereof.

The petition further states that in January, 1922, the record title to the lands, subject to the defects heretofore mentioned, was in A. H. Purdy and A. J. Combs, and

that on January 12, 1922, Purdy and his wife, and Combs and his wife, executed a lease to said lands to the defendant in error Continental Petroleum Company, reserving to themselves, Purdy and Combs, certain royalty interests. That the said Continental Petroleum Company paid or offered to pay to Purdy and Combs a bonus of $8,000 for said lease. That said Continental Petroleum Company purchased said lease with full knowledge of plaintiff's right to the oil, gas, and other mineral interests in the land covered by said lease; that said Continental Petroleum Company purchased said lease not only with full knowledge of plaintiff's rights thereto under his written contract with Purdy, as modified by subsequent oral agreements, but had knowledge also that plaintiff Owens was at the time claiming and asserting his said rights and that, therefore, said Continental Petroleum Company was not a bona fide purchaser without notice, and was therefore a necessary party defendant.

Plaintiff further states that on March 11, 1922, said defendant Continental Petroleum Company assigned all its rights under said lease to the defendant Rowland Oil Company. That thereafter, on June 17, 1922, the defendant Rowland Oil Company assigned a 2-20ths interest in said oil and gas lease to the defendant Freeland Process Company, and that on the same date the defendant Rowland Oil Company assigned a 7-20ths interest in said oil and gas lease to defendant Rollestone Corporation; and on the same date assigned a 1-20th interest in said oil and gas lease to defendant Rollestone Investment Company; that accordingly the record title to said lease, subject to the defects therein as aforesaid, was one-half in said defendant Rowland Oil Company, 2-20ths in said defendant Freeland Process Company, 7-20ths in said defendant Rollestone Corporation, and 1-20th in said defendant Rollestone Investment Company; and that said companies were claiming an interest in the title to said premises in question; that their said claims constituted a cloud upon Owen's title, and they were therefore necessary parties to the action. That each and all of said defendants acquired their said interest with full knowledge of plaintiff's rights and of the fact that plaintiff was asserting his rights in and to said lands, and are therefore not bona fide purchasers without notice; that the interests claimed by said defendants constituted a cloud, which plaintiff asked to be removed.

It is further alleged that said defend-

ants, without the consent and over the protest of plaintiff, are drilling a well upon a portion of said land.

The petition also contains an offer on the part of Owens to fulfill all obligations placed upon him by said written contract, as modified by said oral agreement, and a tender of the sums of money due Purdy under said written contract as modified.

The petition concludes with a prayer for specific performance of said written contract with Purdy as modified by said subsequent oral contract, and for such other and further relief as in equity and good conscience plaintiff might show himself entitled to receive.

To such petition, attorneys Cheatham & Beaver filed a demurrer on behalf of all the defendants, and attorneys Thrift & Davenport filed a demurrer on behalf of defendants Continental Petroleum Company, Rowland Oil Company. Rollestone Corporation, Rolleston Investment Company, and Freeland Process Company. Both demurrers were sustained.

In considering said demurrers the court had before it the following specifically alleged facts confessed to be true by the demurrers, to wit: That on November 6, 1920, Purdy led Owens to believe that he, Purdy, was able to and would convey to Owens a valid, merchantable title to the oil, gas, and other mineral interests in the land involved in this controversy; that, acting upon such belief, which Purdy had created. Owens and Purdy entered into a contract whereby Purdy bound himself to convey good title to such interests for $20,000, $5,-000 cash, balance $15,000 to be paid when title was approved. That upon the execution of such contract, Owens paid Purdy $5,000 in cash, and when the forthcoming conveyance was examined it was found that the title was bad as to one tract, for the reason that Purdy had no title to it; as to other tracts, for the reason that probate proceedings in reference thereto were fatally defective; that Owens at that time was ready and willing and able to fulfill his part of the written contract, but for the failure of Purdy to fulfill his part, the matter dragged along until January, 1922, at which time a modifying oral agreement, which was submerged into a written contract in the form of the promissory notes in question, was made between Owens and Purdy, whereby Purdy and Owens agreed to eliminate the tract to which Purdy had no title and eliminate the value of same, mutually agreed to be $1,250, thereby leaving a balance of $13,750 due on the written

contract; that it was further mutually agreed that this balance be met by three promissory notes of stated amounts, to be secured by certain Riverside Oil & Refining Company notes, then owned and held by Owens; that said notes were executed by Owens and deposited in the bank, and the three Riverside Oil & Refining Company notes deposited therewith as collateral security; that it was mutually agreed that they were sufficient and satisfactory security and that the payment of said notes was conditioned upon Purdy's instituting suits for the purpose of curing the irregularities in the probate proceedings and perfecting title to the land affected thereby; that Purdy failed to do what he had promised to do; that such failure was due to no fault of Owens; that Owens was ready to fulfill his part when Purdy fulfilled his; that Owens had done even more than he was obligated to do by instituting suits and clearing the title to some of the land; that Purdy did nothing and made no effort to do anything, nor offered any excuse for his failure to do same; that Owens at different times offered to comply with his part and insisted that Purdy comply with his; that Purdy persistently refused to do anything, but instead of complying with the contract, and without any effort to comply with same and without any excuse for failure to comply with same, conveyed the identical interests to other defendants, viz., the Continental Petroleum Company; that thereafter the Continental Petroleum Company conveyed its interests to other defendants, heretofore mentioned, and which were, under the showing in the petition, necessary parties and confessed to be by demurrer; that Purdy not only refused to comply with his contract, but refused, to return the $5,000 he had received in cash and refused to surrender Owens' notes, aggregating $13,-750, refused to return the Riverside Oil & Refining Company collateral notes put up as security, and thus by demurrer confessing that Owens had parted with $5,000 in cash, with $13,750 in notes, and with three Riverside Oil & Refining Company notes put up as collateral, and had been guilty of no fault on his part, but had come into court stating these facts, confessed by demurrer to be true, and asking for such relief as in equity and good conscience he might be able to show himself entitled to receive. This was the state of facts confessed to be true, and which the court held were insufficient to constitute a cause of action, or to constitute grounds for any relief. This was error.

Our statutes on procedure in district

courts have been repeated so often and attention called to their provisions so frequently in opinions by this court that we regret the necessity of again calling attention to same.

Section 174, Comp. Stats 1921, provides:

"Actions are of two kinds: First, civil; second, criminal".

Section 175, Id., defines a criminal action.

Section 176, Id., says:

"Every other is a civil action".

Section 178, Id., says:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

Section 231, Id., provides:

"A civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon."

Section 263, Id., provides:

"The rules of pleading heretofore existing in civil actions are abolished; and hereafter, the forms of pleadings in civil actions in courts of record, and the rules by which their sufficiency may be determined, are those prescribed by this code".

Section 264, Id., provides:

"The only pleadings allowed are: First. The petition by the plaintiff. Second. The answer or demurrer by the defendant. Third. The demurrer or reply by the plaintiff. Fourth. The demurrer by the defendant to the reply of the plaintiff".

Section 265, Id., provides:

"The petition must contain: First. The name of the court, and the county in which the action is brought, and the names of the parties, plaintiff and defendant, followed by the word 'petition.' Second. A statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition. Third. A demand of the relief to which the party supposes himself entitled. * * *"

It has been repeatedly held that the prayer, of itself, does not determine the relief to which a party may be entitled, nor the measure of relief to be applied. Myler v. Fidelity Mut. Life Ins. Co., 64 Okla. 293, 167 Pac. 601; Fraley, Admr, v. Wilkinson, 79 Okla. 21, 191 Pac. 156. It is the facts alleged and not the prayer which shows the relief to which the plaintiff is entitled.

It is the plain, persistent, unyielding intent of the Legislature to make the foregoing Code provisions mandatory. When a plaintiff has complied with such provisions, and stated facts which show that he has sustained a detriment without fault on his part, and shows that such detriment has been caused by the wrongful conduct of another, stated facts which show with reasonable clearness that in law or equity the party guilty of such wrongful conduct is liable to plaintiff for the results thereof, it then becomes the duty of the courts, under the purpose for which they are created, to determine from the allegations and proof what relief the plaintiff may be entitled to, and in order to enable them to fulfill such purpose, the district courts are endowed with the dual power of a chancellor and a court at law, so that, under the facts stated and proven, if the law be adequate, then the court will award such relief as the law authorizes, but if the law be inadequate to proper relief, then the court, in its powers as a chancellor, will award such relief as in equity and good conscience the allegations and proof show the plaintiff entitled to receive. St. L. & S. F. Ry. Co. v. Yount, 30 Okla. 371, 130 Pac. 527; West v. Madansky, 80 Okla. 161, 194 Pac. 439; Smith v. Gardner, 37 Okla. 183, 131 Pac. 538.

These plain, simple rules were not followed by the trial court in sustaining the demurrers herein.

We are unable to say what the proof would be, and therefore unable to say what the proper relief should be, but believe it our duty to say that, under the facts confessed by demurrer to be true, the plaintiff is entitled to some relief.

It is our opinion, however, that sufficient facts are not stated to warrant a decree of specific performance, for the reason that it is too difficult from the statement of facts to determine just what specific acts are asked to be performed. The allegations are sufficient, however, when confessed to be true, to show that plaintiff Owens has sustained a detriment, and that Purdy, having caused such detriment, is liable therefor in such sums as the demurrer confesses to be correct, and which, if not denied in further proceedings, in our opinion, should be the return of the $5,000 paid on the original contract, with the legal rate of interest, the return of the Riverside Oil & Refining Company notes put up as collateral, and the cancellation and surrender of the three promissory notes aggregating $13,750. This conclusion, however, is based upon the facts confessed to be true. Should the allegations be denied and put upon proof in an-

other trial, we do not undertake to say what the measure of relief should be.

For the reasons given, the judgment sustaining demurrers is reversed, and cause remanded, with directions to overrule the demurrers, reinstate the amended petition, and grant to the parties a new trial.

Reversed and remanded.

JOHNSON, C. J., and McNEILL, KENNAMER, and BRANSON, JJ., concur.