## BLACKWELL OIL & GAS CO. v. MID-CONTINENT PETROLEUM CORP.

No. 25382.  June 29, 1937.

Rehearing Denied April 5, 1938.

H. S. Gurley, George C. White, and Ames, Cochran, Ames & Monnet, for plaintiff in error.

J. C. Denton, R. H. Wills, J. H. Crocker, I. L. Lockewitz, J. P. Greve, and Felix Duvall, for defendant in error.

BUSBY, J. For convenience, the plaintiff in error will be referred to herein as the gas company, and the defendant in error as the oil company.

This is an appeal and cross-appeal taken by the parties from a judgment and decree of the district court of Kay county rendered upon an accounting pursuant to mandate of this court upon former appeal of this case. (Mid-Continent Petroleum Corporation v. Blackwell Oil & Gas Co., 159 Okla. 35, 15 P.2d 1028).

The property involved in the accounting is what is commonly designated as "drip gasoline" saved by means of a simple apparatus commonly known as a "drip." This drip is inserted into or connected with the gas flow line coming from the mouth of the well and from it is drawn the drip gasoline formed by the more or less natural process of the condensation of vaporous gas flowing from the well through the pipe.

The original controversy arose out of a certain contract entered into between the gas company and the oil company's assignor, said contract having as its apparent purpose the formulation of a working agreement between the parties for the joint operation of a certain oil and gas mining lease.

The oil company was the owner of the oil and gas lease. On November 29, 1920, the Cosden Oil & Gas Company, then owner of said lease, entered into the above-mentioned contract with the gas company wherein the Cosden Company, in effect, conveyed unto the gas company the gas, but no oil, which might be produced from certain described property. The contract then makes provision for the joint operation of the lease by the oil company and the gas company whereby the gas company is to drill for gas and the oil company for oil. The gas company was to take over and operate all gas wells and the oil company was to take over all oil wells, subject to certain conditions relative to volume of production. It was agreed that the gas company set a meter on the premises through which all gas taken shall be measured, and to pay the oil company at the rate of seven cents per thousand cubic feet for one-eighth of the volume of gas taken by it from the leased premises under the assignment.

The gas company completed a gas well upon the premises April 21, 1923. A meter was installed for the measurement of the gas flow, and the gas company attached the drip from which the gasoline was recovered at a point on the flow line between the well and the meter.

The drip was allowed to remain between the mouth of the well and the meter until June 13, 1925, at which time the meter was installed between the well and the drip, thus metering the gas before any of the contents of the flow was removed therefrom.

The oil company claimed as its property the gasoline which resulted from condensa- tion between the mouth of the well and the meter and sought judgment against the gas company for the value thereof. The judgment of the trial court holding that the drip gasoline passed to and became the property of the gas company under the contract was reversed by this court on the former appeal and remanded with directions to enter judgment for the oil company. As heretofore stated, accounting was had in the trial court pursuant to mandate, and from the judgment therein rendered both parties' have appealed.

The gas company, however, on this appeal devotes a great portion of its briefs to the proposition that the decision of this court on the former appeal results in gross and manifest injustice, and should not be followed. This contention is premised upon the rule that an appellate court may review and reverse its former decision in the same case where it is satisfied that gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision, and this notwithstanding the general rule that the decision of the appellate court upon the questions of law becomes the law of the case and controls in all subsequent stages of the proceedings.

Numerous decisions of this court are cited wherein the rule sought to be invoked by the gas company is recognized.

This court on the former appeal, employing the statutory rules for the interpretation of contracts, held that the contract being one regarding natural gas readily condensable, gasoline which comes from the well is not included in the contract and does not pass under the terms thereof. This holding is clearly revealed by the third paragraph of the syllabus of the opinion, which reads as follows:

"Where parties contract regarding natural gas, and there is no provision made therein for the disposition of the gasoline which comes from the well with the gas in an appreciable amount and which is readily condensable, such gasoline is not included within the provisions of the contract, and title thereto does not pass thereby."

Further interpreting the contract, the court held that the oil company was selling and the gas company buying what passed through the meter. This holding is reflected in the fourth syllabus of the opinion, as follows:

"Under the contract involved in this ac-

tion, the gas produced from the gas well on the premises was to be run through a meter. The oil company was selling what passed through the meter, and the gas company was buying and paying for what passed through the meter. The gasoline which condensed in a drip before the gas passed through the meter belonged to the oil company, and no part thereof belonged to the gas company."

The legal proposition announced in the third paragraph of the syllabus of the court quoted, supra, neither overrules nor modifies any former decision of this court, and the rule of stare decisis is not violated. We do not see sufficient error or injustice in that holding to remove the same from the general rule that the holding has now become the law of the case. Even if we should now disagree with the proposition announced, our disagreement furnishes no justification for considering the decision other than in the light of the general rule. Kelly v. Okmulgee Gas Co., 128 Okla. 237, 262 P. 649.

The fourth paragraph of the syllabus merely embodies the court's interpretation of the written terms of the contract. No gross injustice is apparent here and no rule of law transgressed.

An examination of the former opinion reveals the full effect of the decision to be that the gasoline which resulted from condensation between the mouth of the gas well and the meter was not included in the accounting between the oil company and the gas company and that no contract existed relative thereto.

This suit was commenced on June 3, 1925. A drip was maintained between the well and the meter until June 13, 1925. On that date the meter was installed between the well and the drip, and on November 14, 1925, the drip was entirely removed. On May 11, 1927, and during the trial of the cause the drip was again installed between the well and the meter, where it remained until the well ceased to produce. The trial court found that during the first above-mentioned period, that is, to June 13, 1925, the gas company recovered and sold 608,330.9 gallons of gasoline, of the value of $61,690.49, and that it also hauled away 28,959.4 gallons of gasoline, of the value of $3,069.70, making a total value of $64,760.19 for that period for which it was liable to the oil company. The gas company takes no exception to this finding and the oil company takes exception to said finding only as to the items representing gasoline hauled away. The

oil company says that the amount found for gasoline hauled away was entirely too small. We have examined the evidence with reference to the amount and value of the gasoline hauled away and are of the opinion that the same is reasonably sustained by the evidence.

The trial court found that during the third and fourth periods above mentioned, that is, from June 14, 1925, to May 11, 1927, during which said two periods no drip was maintained between the mouth of the gas well and the meter, the gas company was accountable for 552,232 gallons of gasoline, of the value of $45,939.40, being the amount of gasoline which the court found would have been caught in a drip between the mouth of the gas well and the meter had a drip been maintained at said location during said two periods. Both the gas company and the oil company take exceptions to this finding. The gas company contends that in our opinion on the former appeal it is only held accountable for the gasoline which was actually caught in the drip between the mouth of the gas well and the meter, and that since no drip was maintained at said location during said two periods, it is not accountable for any gasoline during said periods. On the other hand, the oil company contends that the effect of our former opinion was that the gas company was required at all times to maintain a drip between the gas well and the meter and the gas company having failed to maintain a drip at said location during said two periods of time, it was accountable for the gasoline which would have been caught therein if one had been maintained, and it further contends that the amount found by the trial court for said two periods was entirely too small.

On the first situation the court made findings of fact and conclusions of law. Its seventh and tenth findings of fact and its fourth conclusion of law read as follows:

"That it is a common and prudent practice, in handling gas of the kind coming from Martin Well No. 2, **to install and maintain a 'drip' for the purpose of taking from the gas any water or waste, or other liquids such as excessive gasoline content, not only to better protect the meter, lines and other apparatus through which the gas may pass,** but to improve the quality of the gas itself when to be used as a fuel, and to lessen danger in its use as a fuel. These things were well known to the plaintiff and its predecessors in title, as is shown by the plaintiff's contentions in this case, and known to the defendant as evidenced by its acts in installing and maintaining

the drips as aforesaid. **Therefore, the court finds that the parties to the contract contemplated that a drip would be installed and maintained,** and that some quantity of drip gasoline would be thus collected, for the purposes and reasons aforesaid. * * *

"The evidence does not show what the difference, if any, would be between the registrations of the gas meter while the drip was in use, and its registrations at times when the whole production was going through the meter without a drip in use, and if a difference, whether it was due to the fact that the drip gasoline had been removed. The court does find from the evidence that a gas meter as used at this well will not properly measure a liquid, or properly measure gas when the gas is accompanied by a liquid in liquid form as it passes through the meter. But the court does not find it to be a fact that gasoline in liquid form passed through this meter at the times no drip was maintained ahead of the meter. The court does find that it is the **general practice and proper practice,** as set forth in findings of fact No. 7, to maintain a drip, **and that the parties to this contract contemplated the use of a drip at this well if it produced gas, and fixed the considerations in the contract with that factor in mind.**

"It appearing to the court from the evidence that the defendant is **now** maintaining a 'drip' **between the meter and the well and it appearing from the evidence that it is proper under the circumstances to maintain such 'drip,'** for the reasons hereinbefore found and set forth, it is concluded that no order of the court with reference to such drip is necessary. **If the defendant should later fail to maintain a proper drip, the plaintiff may apply to the court for proper relief."** (Emphasis ours.)

On the former appeal neither the gas company nor the oil company raised any serious question as to the correctness of the trial court's findings of fact. In our opinion on the former appeal we said:

"The change in the pressure and temperature **caused by the installation and operation of the pinch gate caused a portion of the gasoline coming from the well in the form of a gas to liquefy** and the drip operated to collect the gasoline so liquefied and to retain it in its liquid form. * * * The record shows that the installation of a drip is **customary** for the purpose of removing from gas any fluid carried with the gas, to prevent the fluid from passing into and through the meter and into the gas lines beyond it. * * * **It is apparent that the parties contemplated that the gas should be taken in the usual and customary manner, and through apparatus and machinery customarily installed for that purpose. * * *

"It cannot be said that the parties to the lease intended that the lessor was to have gas impregnated with readily condensable gasoline to the amount of one-half gallon to each one thousand cubic feet. The parties thereto evidently understood that the readily condensable gasoline in appreciable quantities was to be taken from the gas. Such was the evident intent of the contract in question. There is no provision in the contract by which it can be said that the gasoline was assigned or conveyed by the oil company to the gas company."

From the foregoing there can be no question but that the effect of our former opinion was that the gas company was required at all times to maintain the drip between the gas well and the meter; that the oil company was entitled to the gasoline which resulted from condensation between the well and the meter; and that the failure of the gas company to maintain a drip at said location during the two periods under consideration was wrongful and that it was accountable to the oil company for the gasoline which would have been caught in the drip at said location if one had been maintained there during said periods. The trial court in taking the accounting so construed said opinion.

From our examination of the evidence on the accounting trial, we are of the opinion that the trial court committed no error in the amount of gasoline for which it held the gas company accountable for the two periods during which it failed to maintain a drip between the well and the meter.

The gas company further contends that the oil company waived and abandoned its right to the gasoline involved in the third and fourth periods of accounting; but an examination of the record convinces us that this is not true. We find no objection on the part of either party to the trial court's finding concerning the amount and value of the gasoline removed from the drip during the last period of accounting, that is, from May 11, 1927, the date when the drip was reinstalled between the well and the meter, to the end of production. The amount of gasoline saved for that period was 37,603 gallons, valued at $3,784.95.

In addition to the contentions above enumerated, the gas company makes several contentions relative to the oil company's right to recover for any of the gasoline involved in all five periods of accounting, and also as to its right to recover for

certain specified portions of said gasoline. However, all of these contentions were either raised, or should have been raised, on the former appeal. Therefore, our opinion on the former appeal foreclosed all of said questions. State ex rel. Nicomen Boom Co. v. North Shore Boom & Driv. Co. (Wash.) 113 P. 1104; Harris v. Brady, 136 Okla. 274, 277 P. 579; Freeman v. Pearce, 133 Okla. 41, 270 P. 1095; Armstrong v. White, 122 Okla. 78, 251 P. 46; Lamb v. Alexander, 83 Okla. 292, 201 P. 519; note also Gaines v. Caldwell, 148 U. S. 228, 37 L. Ed. 432.

We now come to the question of the gas company's allowable deductions.

In this connection the oil company contends that, under the circumstances here presented, the gas company was entitled to no deductions, and further contends that if any deductions were allowable, the amount thereof should have been considerably less than was actually allowed by the trial court. After an examination and consideration of the numerous contentions of the oil company with reference to deductions, it is our opinion that its contention that the gas company was entitled to no deductions is untenable and that the trial court, under the circumstances, adopted the most equitable means possible in arriving at the amount of said deductions. We are also of the opinion that the amount of deductions allowed is reasonably sustained by the evidence.

The remaining question relates to the allowance of interest by the trial court. The gas company contends that the trial court erred in allowing the oil company interest in any amount. On the other hand, the oil company contends that the trial court erred in its manner of calculating the interest due it and that the amount allowed was too small.

The trial court concluded with reference to interest that, although the oil company's action was based upon an implied contractual obligation, it was entitled to recover interest. Pursuant to that conclusion, it proceeded to calculate the amount of gasoline for which the gas company was accountable for each of the five periods of accounting, and, after deducting therefrom the amount of deductions which it found the gas company was entitled to for each of said periods, it allowed interest on the resulting balances from the end of each of said periods to the date of judgment at the rate of 6 per cent.

The oil company contends that the interest should have been calculated from the end of each month on the net value of the gasoline taken during the month. On the other hand, the gas company contends that, since the oil company's petition did not specifically pray for interest, it was not entitled to any interest. It further contends that because the oil company's action was upon an implied contractual obligation, any allowance of interest was erroneous. Under the circumstances it is unnecessary for us to pass upon the applicability of section 9986, O. S. 1931, which provides that for wrongful conversion of personal property interest from the time of conversion is recoverable. Section 9964, O. S. 1931, provides as follows:

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

Section 9959, O. S. 1931, provides as follows:

"Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

Since the oil company's action was upon the breach of an obligation to pay money only, and since the amount sued for by the oil company was certain or capable of being made certain by calculation and its right to recover was vested in it upon a particular day, both the aforesaid sections 9964 and 9959 are applicable to this action.

We have repeatedly held that the prayer is no part of the petition and plaintiff is entitled to all the relief the evidence warrants. Rose v. First Nat. Bank of Stigler, 93 Okla. 120, 219 P. 715; Harmon v. Hines, 160 Okla. 120, 16 P. (2d) 94 Moseley v. Boyd, 167 Okla. 485, 30 P. (2d) 897; Page v. Oklahoma City, 129 Okla. 28, 263 P. 448; Owens v. Purdy, 90 Okla. 256, 217 P. 425; Withington v. Gypsy Oil Co., 68 Okla. 138, 172 P. 634.

While the prayer of the oil company's petition does not pray for interest, it does pray "that said plaintiff shall have and recover for the costs of this action and such other and further relief as is just and equitable," and we have frequently held that in a suit in equity a prayer for general relief entitles the plaintiff to any and all specific relief which might have been prayed for. Interstate Mortgage Trust Co.

v. Cunningham, 78 Okla. 62, 188 P. 1081; Henderson v. Arkansas, 71 Okla. 253, 176 P. 751; Brown v. Privette, 109 Okla. 1, 234 P. 577.

It is also very generally held that no prayer for interest is necessary when the same is recoverable by virtue of a statute. 33 C. J. p. 257, sec. 188; Haley v. Supreme Court of Honor, 139 Ill. App. 478; Baker v. Northern Assur. Co. (Mich.) 183 N. W. 61.

We have not overlooked section 198, O. S. 1931, which, among other things, provides that plaintiff's petition must contain a demand of relief to which he supposes himself entitled, and "if the recovery of money be demanded, the amount thereof shall be stated; and, if interest thereon be claimed, the time from which interest is to be computed shall also be stated." It is not necessary for us to construe this section. It is sufficient to say that the oil company's action being in equity for accounting for gasoline theretofore and thereafter produced, it was impossible for said company to state either the amount of money to which it was entitled or to state the time or times from which interest was to be computed, and therefore said section does not preclude its right to interest.

We conclude that the trial court was right in concluding that the oil company was entitled to interest. Under the circumstances, we cannot hold that the trial court erred in computing the oil company's interest from the end of each of the periods of accounting instead of from the end of each of the months involved in the accounting as contended for by the oil company. The judgment of the trial court is in all things affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS, CORN, and HURST, JJ., concur. RILEY and GIBSON, JJ., dissent.