**WEST EDMOND HUNTON LIME UNIT,**
a body politic and corporate, Appellant,

v.

**J. M. YOUNG and Kate Young, Appellees.**

No. 37753.

Supreme Court of Oklahoma.

Jan. 28, 1958.

Rehearing Denied March 25, 1958.

As Amended May 12, 1958.

Application for Leave to File Second Petition for Rehearing Denied May 27, 1958.

T. Murray Robinson, Oklahoma City, George W. Hazlett, Cleveland, Ohio, Robinson, Shipp, Robertson & Barnes, Oklahoma City, McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, Cleveland, Ohio, of counsel, for appellant.

John Barry, LaJolla, Cal., Wayne W. Bayless, Oklahoma City, for appellees.

JOHNSON, Justice.

This is the second appeal in this case. The first appeal, Young v. West Edmond Hunton Lime Unit, Okl., 275 P.2d 304, involved a suit by certain royalty owners (plaintiffs in error in the first appeal and defendants in error in this second appeal) for themselves and for others similarly situated against a unit organization (West Edmond Hunton Lime Unit, defendant in error in the first appeal and plaintiff in error herein) created pursuant to unitization statutes for operation of a producing oil field, for loss sustained from failure of the unit and operator to take or deliver unit production at the highest sale or market price available. The trial court entered judgment for the defendant (unit) and plaintiffs appealed. This Court in deciding the case on first appeal held that under 12 O.S.1951 § 233, plaintiffs were authorized to sue for themselves and all others similarly situated, and that the unit operator breached trust to numerous owners of royalty interests in separately owned tracts of the unit, who in a certain period of time had not received their share of the unit production in kind, or proceeds thereof measured by the highest available price, and reversed and remanded the cause (275 P.2d at pages 310–311) and in doing so said:

> "The cause is remanded, and the trial court is directed to enter judgment for the plaintiffs and against the defendant for the sum of $1,203.30, and to enter judgment directing the defendant to account to and pay all persons owning royalty interests on oil produced from the unit tracts involved herein during the time period involved herein, from September 28th to December 17th, such sums, respectively, that each of said royalty owners shall have received in proceeds for their percentage of the oil produced in said period a sum equal to $3 per barrel for said oil."

The present appeal is brought by the Unit (plaintiff in error) from the judgment entered by the District Court on the mandate issued by this Court in the former (first) appeal. It contends that the District Court judgment is not in accord with the terms of the mandate.

The question presented on this appeal is whether or not the District Court has properly carried out the mandate issued by this Court after reversing the District Court's original judgment in favor of the Unit, and directing entry of judgment in favor of the Youngs and other royalty owners.

The Unit makes no attack upon the previous decision of this Court, 275 P.2d 304, which holding, as a matter of law, constitutes the law of the case, and the judgment in favor of the Youngs has been paid. The Unit asserts that this second appeal concerns only the identification of other royalty owners in situations similar to the Youngs, who are entitled to the benefit of the Court's previous decision and the method of determining and paying the amounts owing to them respectively.

It is contended by the defendants in error that this second appeal presents the

same questions, save the allowance of interest, as was decided by this Court on the first appeal (275 P.2d 304). The Unit (plaintiff in error) contends that this second appeal presents questions of procedure and evidence that were neither presented to nor considered by this Court on the former (first) appeal.

For the purposes of clarity the basic facts on which the original action and holding of this Court on the first appeal, Young v. West Edmond Hunton Lime Unit, supra, were based are briefly summarized as follows: The Unit was created by order of the Corporation Commission July 29, 1947, and became effective October 1, 1947, pursuant to an Act of the Legislature. See opinion in first appeal, supra.

Under the plan, the Unit Operator, under the direction of the Operating Committee, had exclusive power to "supervise, manage and conduct the further development and operation of the Unit Area for the production of oil and gas." By the statute and the plan, one-eighth of all oil produced from the Unit was in all cases to be treated as royalty oil. It was unlawful for any lessee, or any owner of an undivided interest in any tract, to, in any manner, interfere with the management or operation of the unitized area.

On September 28, 1948, after unitization, Phillips posted price at $3 a barrel for Unit oil, which price continued until December 19, 1948. Other purchasers of oil in the Unit, including Sohio, the Unit Operator, paid only $2.65 per barrel. Under the Plan, the Unit was the agent and trustee of all royalty owners, and it was the Unit's duty to sell all royalty oil for $3 per barrel, the highest market value, or posted price, during such period.

The Youngs, for themselves and the numerous royalty owners, filed suit to recover from the Unit 35 cents per barrel for their oil, which the Unit sold during the time the market price was $3 per barrel.

The Unit contended that the royalty owners, having before unitization executed division orders to purchasers of oil, were bound by such provisions after unitization, and that it was not required to secure further authority to sell their oil, and further, the defendant contended the case was not a proper class action, because many of the royalty owners might have different interests and that they would not be in the same class, and that each royalty owner should be required to file a separate suit for their interest. The trial court, in accord with these contentions, rendered judgment for the Unit resulting in plaintiffs' appeal, and, as hereinbefore stated, this court in Young v. West Edmond Hunton Lime Unit, supra, held against the contentions of the Unit and reversed and remanded the cause to the trial court.

On July 22, 1955, the trial court in accordance with this Court's mandate and opinion spread the mandate of record, rendered judgment for the Youngs, ordered the defendant to file on or before the first day of September, 1955, its verified report showing the amount of oil produced from the Unit from September 26, 1948, to December 17, 1948, which was sold for less than $3 per barrel, and to set forth the names and fractional interests of all owners of royalty in the Unit, whose oil, produced by the Unit, was purchased for less than $3 per barrel; the defendant was authorized to secure all information and data necessary from any persons or pipeline companies in order to comply with the terms of such order. It was further ordered that defendant perform all acts necessary to carry out and comply with the terms and provisions of the judgment; to which order defendant filed a motion for new trial. No appeal was taken from that judgment.

Duces Tecum subpoenas were issued to Sohio, Champlin and Continental Oil Companies. Thereafter motions to quash such subpoenas were filed by said companies.

The plaintiffs filed and secured an order of the District Court authorizing plaintiffs to file a petition for discovery against Continental, Champlin and Sohio Petroleum Companies, and on September 9, 1955, the petition for writ of discovery was filed,

alleging in substance that the Unit had failed and refused to supply the information necessary to comply with the judgment of the Supreme Court, and that said parties, being the purchasers of oil, had in their possession the names of the royalty owners and the amount of royalty oil sold for less than $3 per barrel, and the plaintiffs requested the court to enter an order directing the said companies to answer the intervenors.

Thereafter, on September 29, 1955, the plaintiffs filed "demand for production of records and accounting on behalf of royalty owners, who signed contracts authorizing institution of the above suit." This demand was served upon the Unit, Champlin, Continental and Sohio, and said demand was filed for record in the District Court. Attached to the demand was the original contract entered into between the owners of royalty in the Unit empowering and authorizing the attorney to file suit to recover the difference between the $2.65 that they received for the oil and the $3 which they were entitled to receive. The parties served were requested to account to such royalty owners, as directed by the Supreme Court in its opinion.

The defendants, Champlin, Sohio and Continental, demurred to the plaintiffs' petition for discovery. All parties stipulated as to the amount of oil runs from the Unit during the period involved and the oil purchased by Sohio, Phillips and Champlin during this period.

Various witnesses of Continental, Champlin and Sohio appeared and testified concerning the record of royalty owners whose oil was purchased. It developed from such testimony that some of the royalty owners could not be ascertained from their records because they had purchased from other oil companies and had relied solely upon the other oil companies' records. It appears from the journal entry that the witnesses for the three purchasing companies were present in the courtroom and the defendant would not produce such testimony or admit its relevancy despite the fact that Sohio Petroleum Company was the Unit Operator. Whereupon the court stated that such witnesses would be treated as the court's witnesses, and in the journal entry the court found "that all royalty owners entitled to share in the judgment directed to be rendered by this court can be identified by the statements introduced in evidence, save as to royalty owners who had executed division orders, authorizing some companies to run and purchase the oil other than the pipelines that actually ran and purchased the oil, and that in such instances the pipeline companies running the oil made payment for the entire amount directed to such company, or companies, who, in turn, made repayment to the royalty owners; that the companies above referred to have records from which the names, addresses and interest of such royalty owners can be determined."

The court further found that it was the duty of the Unit Operator to secure such information. Thereafter, the court rendered judgment against the defendant for the sum of $41,656.17, plus interest at the rate of six percent from January 1, 1949, to date, which interest at the date of judgment on the mandate amounted to $19,005.93, making a total of $60,622.10, plus the costs of this action and ordered such sum to be paid into court to be disbursed; one-half of said sum to be set over to and paid to plaintiffs' attorneys and the balance to be disbursed to royalty owners, less gross production and excise taxes payable on said oil.

Thereafter, on June 29, 1956, defendants filed a motion for new trial. Later, on September 18, 1956, an amended motion for new trial was filed. The motion as amended was overruled, resulting in this appeal.

There is no dispute as to the amount of oil produced by the Unit and sold at $2.65 per barrel during the time that the highest available market price was $3 per barrel, the price admittedly paid by Phillips during the period in dispute. This was stipulated. The basic judgment of $41,656.17 represents the difference in what the stipulated amount of oil (1/8 royalty) produced by the

Unit was sold for, i. e., $2.65 per barrel, and the highest available market value of $3 per barrel, after deducting the amount paid to the Youngs in satisfaction of their judgment in the cause.

The nature of this action is not only well demonstrated to be a class action, but has been so declared by our previous decision, Young v. West Edmond Hunton Lime Unit, supra. The record above outlined clearly shows that the identity of the royalty owners similarly situated to the Youngs was known, should have been known, or was available to the Unit. In equity, and under the statute permitting the creation of the Unit, the Unit, under the circumstances of its fiduciary relationship as revealed by the record, must account to the royalty owners, as to its handling of their affairs. It is charged with the knowledge of and the identity of its membership, including the royalty owners, for whom it was created; and, as a trustee, although acting in good faith, is accountable under the law. The applicable rule in the instant case has been well stated in the Restatement of the Law of Trusts, Vol. 1, Sec. 201, as follows:

"A trustee commits a breach of trust, not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of a mistake as to the extent of his duties and powers. This is true not only where his mistake is in regard to a rule of law * * * but also where he interprets the trust instrument as authorizing him to do acts which the court determines he is not authorized by the instrument to do. In such a case, he is not protected from liability merely because he acts in good faith, nor is he protected merely because he relies on the advice of counsel. * * The extent of his duties and powers is determined by the trust instrument and the rules of law which are applicable. * * * "

and applied in our prior decision in this case, 275 P.2d 304.

In this respect the judgment of the trial court is affirmed.

We now consider the Unit's contention that the trial court erred in allowing interest accruing before the judgment.

It is argued that the royalty owners are not entitled to interest for any period of time prior to entry of judgment because, as it contends, there was no debt prior to the date of the judgment. They assert that at most the royalty owners' action was nothing more than an unliquidated claim for damages prior to the entry of the judgment. In support of this contention the Unit cites and relies upon Essley v. Mershon, Okl., 262 P.2d 417, and cases of similar import.

In the last cited case it was stated that the amount due plaintiff was unliquidated and was not certain or determined until rendition of judgment by the trial court, and then concluded by stating that the demands of both parties were clearly unliquidated and that no interest should have been allowed prior to judgment fixing the amount due.

This case and others cited by the Unit are not applicable in the instant case.

The amount due in the instant case was certain. The royalty owners were entitled to the difference between what the oil per barrel was sold for and the highest available price per barrel, which was a difference of 35¢ per barrel. The number of barrels sold was stipulated. Thus the amount of recovery was certain, or could be made certain by mere mathematical calculation. The royalty owners right to recover in the instant case was vested on the 17th day of December, 1948, the last day of the sale of the oil for less than the highest available market price, and the royalty owners were entitled to recover interest thereon from that date, and it is immaterial that interest was allowed from the 1st day of January, 1949, the date suit was filed. 23 O.S.1951 § 6 and § 22.

For an application of this statutory rule see Blackwell Oil & Gas Company v. Mid-

Continent Petroleum Corporation, 182 Okl. 588, 79 P.2d 227; Champlin Refining Co. v. Phillips Petroleum Co., Okl., 269 P.2d 993, and for a text book statement concerning the applicable rule see 54 Am.Jur., Trusts, Sec. 502, p. 400 et seq.

We have carefully examined the record herein and find no errors substantially affecting the rights of parties involved; therefore, for the reasons hereinbefore stated, and in accord therewith, the judgment of the trial court is affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, JACKSON and CARLILE, JJ., concur.

WILLIAMS, BLACKBIRD, and HALLEY, JJ., dissent.